## HANSON v. TOWNSHIP OF RED ROCK, IN MINNEHAHA COUNTY, *et al.*

1. The laws of the United States require that all township lines shall be straight lines connecting the township corners, and all section and quarter section corners established by the government surveyor in surveying the exterior lines of townships should be so placed as to coincide with such township lines.

2. When the government surveyor, in the field notes returned by him to the government, shows that such section and quarter section corners are established on a straight line between township corners, and fixes their location by courses and distances, these field notes are to be accepted as presumptively correct, and can only be overcome by the most clear and satisfactory evidence that the government surveyor established such corner monuments at points other than those indicated by the government field notes.

3. The rule that monuments will control courses and distances only prevails when the boundaries are fixed and known, and unquestioned monuments exist. Where the boundary is not fixed and known, and the location of monuments is in dispute, or left in doubt by the evidence, courses and distances will be considered in fixing the boundaries.

4. When section or quarter section corners on a town line are lost or obliterated, it is the duty of the surveyor, in making a resurvey, to replace them on a line coinciding with the town line run on a straight line between the township corners, in accordance with courses and distances indicated in the government field notes, unless it can be shown

by clear and satisfactory evidence that such corners were established by monuments at points other than those indicated by the government field notes, at the time of the original government survey, and by authority of the government surveyor.

5.  Old mounds, with pits and stakes having the appearance of government mounds, may be considered by the court or jury in determining whether or not they are the original government mounds. But when found at points distant from the points indicated by the government field notes, by courses and distances, they afford but slight evidence that they are the original government mounds, unless they have existed for a long time, and been generally recognized as the undisputed government corner.

6.  Incidental calls, noted in field notes as such in passing, unless especially designated in such manner as to show an intention to make them locative, are not such calls as will ordinarily have precedence over calls for courses and distances.

(Syllabus by the court.   Opinion filed Nov. 24, 1893.)

Appeal from circuit court, Minnehaha county.   Hon. F. R. AIKENS, Judge.

Action by Gilbert Hanson against the township of Red Rock, in Minnehaha county, and Thomas Whaley, R. Kyle and G. W. Fay, board of supervisors of said township, for an injunction.   Defendants had judgment, from which, and an order denying a new trial, plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*Palmer & Rodge*, for appellant.

If the stakes or monuments placed by the government in making survey to indicate the section corners and quarter posts can be found, or the place where they were originally placed can be identified, they are to control in all cases.   Arneson v. Spawn, 49 N. W. R. 1066; Jones v. Kimble, 19 Wis. 452; Hess v. Meyer, 41 N. W. R. 422; Knight v. Elliott, 57 Mo. 317; McClintock v. Rogers, 11 Ill. 279; Reinert v. Brunt, 21 Pac. 809; Morland v. Paige, 2 Ia. 139.

A quarter corner or mound is entitled to as much weight in determining the boundaries of land as a section or township

corner, no matter how far out of the way it may be.  Campbell
v. Clark, 8 Mo. 558; Vroman v. Dewey, 23 Wis. 530; Britton v.
Ferry, 14 Mich. 53.   Plaintiff having shown that the line indi-
cated by the Van Antwerp survey over his land was not the
true section line, and that the respondents were threatening to
open the highway along the line of the resurvey over and
across his lands, he was entitled to the injunction prayed for.
Grant v. Crowe, 47 Ia. 632; Jerome v. Ross, 11 Am. Dec. 484;
Smith v. Fitch, 22 Pac. 935.

*Keith & Bates*, for respondents.

CORSON, J.   This was an action brought by the plaintiff to
enjoin the defendants, supervisors of Red Rock township, from
opening a highway on the townihip line between Red Rock and
Brandon townships on a line established by Mr. Van Antwerp,
deputy county surveyor of Minnehaha county, in 1889.   The
plaintiff is the owner of the E. ½ of the N. W. ¼ and the N. W.
¼ of the N. W. ¼ of section 7, Red Rock township, and the E. ½
of the N. E. ¼ of section 12, Brandon township.   The case was
tried by the court without a jury, and findings of fact made,
and judgment rendered in favor of the defendants.   A motion
for a new trial was made and overruled, and from the judgment
and order the plaintiff appeals.   Numerous errors are assigned
but, in the view we take of the case, it will only be necessary
to pass upon the question as to whether or not the findings of
the court are against the weight of the evidence.   Randall v.
Burk Twp. 4 S. D. 337, 57 N. W. Rep. 4.   For a more full un-
derstanding of the points involved, we have annexed a diagram
showing the township line as surveyed by Mr. Van Antwerp,
deputy county surveyor of Minnehaha county, and the line as
claimed by the plaintiff:

DIAGRAM OF LINES IN CONTROVERSY.

A, B—Township line surveyed by —an Antwerp.
A, a, a' and B—Undisputed old government corners.
z—N. W. corner of 7 and N. E. corner of 12, as claimed by plaintiff, 86 rods easterly of Van Antwerp's line.

It will be noticed that the plaintiff owns land on both sides of the township line between Red Rock and Brandon townships. The plaintiff and appellant contends that the line indicated by letters x, y and z is the original township line between a' and B, instead of the line A, B, which represents the Van Antwerp survey. The line in controversy is the north and south town line between the townships of Red Rock and Brandon. As we un-

derstand counsel, it is not disputed that the corners of the two townships were established by the government survey at points A and B, and that the original government mounds were found at the points indicated by a and a' on the line as established by the Van Antwerp survey, and that the town line from A to a', two miles, is properly located by the Van Antwerp survey, leaving the four miles from a' to B in controversy in this action. And we do not understand that the fact that Mr. Van Antwerp correctly made the resurvey in conformity with the government field notes as to courses and distances is controverted; the only question being as to whether or not Mr. Van Antwerp, in making the survey, should have followed the boundaries as indicated by monuments at x, y and z. The line northerly of point z to the north town line may be presumed to be a line drawn from point z to B, the undisputed government corner of the township, as counsel for appellant advances no theory as to that portion of the line.

It appears by the evidence that the exterior lines of the township of Red Rock were originally surveyed by the government surveyor in 1864, and the township subdivied about the same time. It further appears that the plaintiff settled upon his land in the spring of 1872. On the trial the plaintiff introduced a number of witnesses who gave evidence tending to prove that as early as 1872 they saw a mound, pits, and stake, indicating that point z was the N. E. corner of section 12, Brandon township, and the N. W. corner of section 7, Red Rock township; also, evidence tending to prove that they saw in 1873 and subsequently, up to 1876, a mound, pits, and a stake at each of the points x and y, one and two miles southerly from z. There was also evidence of an old road claimed to be a town road by plaintiff's witnesses, running along the line x, y, and thence to the town line as established by the Van Antwerp survey at a point northerly from z. When this road was first used does not clearly appear, but from the evidence it would seem to have been about 1875 or 1876. The defendants introduced a

number of witnesses who gave evidence tending to prove that
in 1872, and subsequently, they saw a mound, pits, and a stake,
indicating the corner of sections 7 and 12, at or near the Van
Antwerp line, A. B, about 86 rods west of point z; and two of
them testify that plaintiff, Hanson, pointed out the mound, pits,
and stake to them as the N. E. corner of 12 and N. W. corner
of 7, according to the government survey. However, we think
it is established by the evidence that from about 1872 up to
1876 there were mounds having the appearance of government
mounds at the points x, y, and z; but by whom, or when made,
does not appear. The evidence does not disclose anything in
regard to them during the eight years intervening between the
survey of the township lines in 1864 and 1872. It does appear,
however, from the evidence, that as early as 1874 or 1875 some
of the settlers in Red Rock township disputed the fact that
these were the original government mounds, and in 1876 the
mounds at x and y were destroyed by some one in the night-
time, and have not since been replaced, and that the mound at
z was only preserved by being guarded by the plaintiff. As
early as 1875, Mr. Langness, a witness for the defendant, and
a surveyor in Minnehaha county, in surveying some lines in
Brandon township, took mound at point y as a point on the
township line between Red Rock and Brandon townships as the
initial point of his survey; but upon running a line from that
point to the north town line, he found it made Brandon town-
ship about 60 rods too long, easterly and westerly. He then
went to point B, and surveyed on a line southerly 60 rods fur-
ther to the west, and adopted that as the town line at that
time. It further appeared by the government field notes that
Red Rock township is a fractional township adjoining the Min-
nesota state line, extending nearly four miles easterly and
westerly. The straight line, A, B, as surveyed by Van Ant-
werp, is within 29 links of the proper distance from the east
town line, as called for by government field notes on the Min-
nesota state line, while line x, y, z, at point z, is about 86 rods

short of the measurements called for in the government field notes. There is no evidence tending to prove that the line A, B, as adopted by the Van Antwerp survey, does not give the parties settled in Brandon township along the town line, all the land called for in their patents, while the evidence does show that the adoption of the line x, y, z gives to them additional land, and to the plaintiff, especially, about 80 acres more than his patent calls for. It further appears from the evidence that the plaintiff, in 1872 or 1873, erected a cabin and stable just westerly of the line A, B, which, if his theory is correct, would be about 86 rods westerly from the town line, and that when he rebuilt better buildings, subsequently, they were erected in the same place. It further appears that Thomas Oleson. who owns the S. ½ of the N. E. ¼ of section 1, Brandon township, and who was one of the principal witnesses for the plaintiff, in planting trees in 1875, made the easterly line of his trees about two rods westerly of the line A. B. His only explanation of this fact is that Langness, the surveyor, in 1875, pointed out to him this line as the line by which to plant his trees. The plaintiff, Hanson, admits that about 1875 it was rumored that the settlers up in that part of the township had too much land, and that he went to the land office to get some locations rectified, but did not succeed.

Section 2395, Rev. St. U. S., provides as follows: "The public lands shall be divided by north and south lines run according to the true meridian, and by others crossing them at right angles, so as to form townships of six miles square, unless where the lines of an Indian reservation, or of tracts of land heretofore surveyed or patented, or the course of navigable rivers, may render this impracticable; and in that case this rule must be departed from no further than such particular circumstances require." It is quite clear from the provisions of this section that all township lines are required to be straight lines connecting the township corners, and that all section and quarter section corners established by the government surveyor in

establishing township lines should be made to coincide with such township lines. Therefore, when the government surveyor, in the field notes returned by him to the government, shows that such section and quarter section corners are established on such straight lines between the township corners, and fixes their location by courses and distances, these field notes are to be accepted as presumptively correct, and can only be overcome by the most clear and satisfactory evidence that such surveyor actually established such corner monuments at points other than those indicated by the government field notes. The rule that fixed monuments will control courses and distances only prevails when the boundaries are fixed and known, and unquestioned monuments exist; and where the boundary is not fixed and known, and the location of the monuments themselves is uncertain, or left in doubt by the evidence, then courses and distances will be considered in fixing the boundaries. The rule is well stated by the supreme court of Iowa in Yocum v. Haskins, 81 Iowa, 436, 46 N. W. Rep. 1065. In that case the court says: "It is a well-established rule that when boundaries are fixed and known, and unquestioned monuments exist, and neither courses, distances, nor computed contents correspond with the monuments, the monuments govern. Pernam v. Wead, 6 Mass. 131; Nelson v. Hall, 1 McLean, 518. When the boundary is not fixed and known, but is in dispute, courses, distances, and contents may be considered, in fixing and knowing the true boundary. When, as in this case, the dispute is as to which of two points is the established corner, and one point is where such corners are usually established, and such as to give to each owner the quantity of land purchased, and the other is remote, and gives to some more, and and others less, than the quantity of land purchased, it will surely require less evidence to convince the mind that the former is the true line than that the latter is." The rule is also clearly stated by Chief Justice PARSONS in in Pernam v. Wead, 6 Mass. 131. The court says: "When the boundaries

of land are fixed, known, and unquestionable monuments, although neither courses nor distances nor the computed contents correspond, the monuments must govern. With respect to courses, from errors in surveying instruments, variation of the needle and other causes, different surveyors often disagree. The same observations apply to distances arising from the inaccuracies of measures, or of the party measuring and computations are often erroneous. But fixed monuments remain. About them, there is no dispute or uncertainty; and what may be uncertain must be governed by monuments, about which there is no dispute." The law of this state as to making resurveys is as follows: Comp. Laws, § 694: "In retracing lines or making any survey he [the surveyor] shall take care to observe and follow the boundaries and monuments as run and marked by the original survey, but shall not give undue weight to partial and doubtful appearances or evidences of monuments, the recognition of which shall require the presumption of marked errors in the original survey, and he shall note an exact description of such apparent monuments." Therefore, while the surveyor, in making a resurvey, is required to take care to observe and follow the boundaries and monuments as run and marked by the orignal survey, he is also required not to give "undue weight to partial and doubtful appearances or ev·dences of monuments, the recognition of which shall require the presumption of marked errors in the original survey."

In the case at bar, not only would the surveyor be required to presume marked errors in the original government survey, but he would be required to disregard the government field notes as to courses and distances, and to give undue weight to partial and doubtful appearances or evidence of monuments. in order to adopt the line claimed by the plaintiff as the township line. At points x and y the surveyor says he found nothing to indicate the existence of government mounds, and, as we have seen, whatever there had been to indicate such mounds had been distroyed in 1876. At z he says he found nothing except

a mound and a stone; no pits, or other evidence that the mound
had ever been established by a government surveyor.   We are
of the opinion therefore, that the surveyor, in his resurvey,
properly treated the section and quarter section corners be-
tween a' and B as lost corners, and established them by placing
them on the straight line between the undisputed township cor-
ners A and B.   The duty of a surveyor in relocating lost cor-
ners on township lines, when the monuments claimed to be
government monuments are disputed, and not clearly estab-
lished, is to establish them on a line coinciding with the town-
ship line at the points indicated by the government field notes;
that is, on a straight line connecting known and undisputed
government monuments on such township line.   The law gov-
erning this class of cases is so clearly stated by the supreme
court of Michigan in Hess v. Meyer, 41 N. W. Rep. 422, 73
Mich. 259, (decided in 1889,) that we quote quite largely from
the opinion.   Mr. Justice CHAMPLIN, speaking for the court
says:   "The exterior lines of the township are entirely inde-
pendent of the interior subdivisions, and are to be made by dif-
ferent surveyors; the regulations of the department of the in-
terior, which have the force of law, not allowing the same sur-
veyor who ran the exterior lines of the township to subdivide
it.   Township lines are required to be straight lines a distance
of 480 chains.   Therefore, when any two know monuments are
found to exist on such line, a right line between these monu-
ments would represent the location of the town line; and al-
though the section corners on an east and west town line may,
through error in the chainmen, be located and placed by the
government surveyor either east or west of where they prop-
erly should have been placed, and must so remain, there is no
such liability to error as to placing them either north or south
of the proper place on such line.   They are not dependent upon
section corner or quarter posts placed when the interior of the
sections are surveyed, because, as before stated, they are
placed in position anterior to, and independent of, such interior

surveys.    It follows that, where a section corner on an east and west township line is lost, the proper method would be to run a straight line from the nearest known monument on the town line on either side of the lost corner or corners, and replace the post, according to the field notes of the government survey, upon the straight line connecting the two known corners.  Such town line cannot be swerved from a right line by measuring from a known quarter corner north of the line to one south of the line, and dividing the distance.    To do so would make. the survey of the town line subordinate to the survey of the subdivision of the township, when the contrary is not only the rule, but the fact.    The northeast corner of section 3, being a corner on a town line as originally surveyed, is lost.    In relocating it, the surveyor, whose survey is relied upon by the plaintiff, as it was evidently by the jury, measured from the quarter section post north to a quarter section corner south of the town line,— both being known monuments,—and divided the distances equally, and located the section corner equi-distant from the two quarter posts.    That would be right, provided it coincided with a right line run between the nearest two known monuments on the government survey of the town line.    *   *   *   *   In case of lost section corners on town or range lines, the lines should be resurveyed between the nearest known government monuments (on the town line) on either side of the lost corner or corners, and the section corners relocated on a straight line between such monuments at the distance indicated in the field notes, and the lost quarter posts at equal distances between the section corners."

The court was speaking of an east and west township line, but, of course, the same principles apply to a north and south line.  If such would be the rule as applied to section and quarter section corners established upon town lines, for much stronger reasons should the rule apply in re-establishing the township line itself.    Therefore, upon the evidence in this case, we are of the opinion that the court properly found that the line A. B, as es-

tablished by Mr. Van Antwerp, was the original township line, as established by the government survey. We think no court would be justified in finding from the evidence in this case that the government surveyor, after running the line from A to a' on the line indicated by the government field notes, then diverged to the east, and run the township line along the line x, y, z. A court, to so find, would be not only required to presume marked errors in the government survey, but to presume the most gross negligence or incompetency on the part of the government surveyor. While government surveyors may, and doubtless do, make errors in their surveys, owing to the imperfection of instruments, difference in chaining, etc., an error that places a section corner, that should be upon a town line, 86 rods east of a north and south township line run in a straight course between the undisputed township corners, without any note of the fact in the field notes, seems so improbable, that a party claiming such a line to be the original government line should establish the fact by clear and satisfactory evidence. The counsel for appellant contend that the court should have so found in this case, because the evidence did establish that fact. But we did not so view the evidence. That mounds resembling government mounds existed from 1872 or 1873 up to 1876 at points x, y, z, and that the one at point z still exists, may be conceded. But there is no evidence, other than that the mounds had the appearance of government mounds, that they were placed at those points by the government surveyor, and there is no evidence as to when or by whom they were made. Old mounds, with pits and stakes having the appearance of government mounds, may be considered by the court or jury in determining whether or not they are the original government corners. But when found at points distant from the points indicated by the government field notes, by the courses and distances, they afford but slight evidence that they constitute the original government mounds, unless they have existed for a

long time, and are generally recognized as the undisputed government corners. If found at or near the points indicated by the government field notes, or if they have for a long time been recognized as original government corners, the mounds themselves, if they have the appearance of original government mounds, may afford sufficient evidence that they are such. The weight, therefore, to be given to the existence of such mounds, depends largely upon the position,—whether near or remote from the proper points as indicated by the government field notes. Therefore, the fact that mounds resembling government mounds were found at points x, y, and z at quite an early day, which are shown to be so distant from the points where such mounds should be found to correspond with the courses and distances indicated by the government field notes, and so distant from the township line run in a straight course between the undisputed corners of the township, and not generally recognized as the original government corners, affords but slight evidence that they were the original goverament corners, as against the uncontradicted facts in this case. As we have before stated, the line of the Van Antwerp survey connects by a straight line the two undisputed government township corners, and corresponds substantially with the courses and distances indicated by the government field notes of the original survey. This line corresponds substantially with the calls of the field notes as to distance from the Minnesota state line. It gives to the plaintiff all the land westerly of that line in Brandon township that his patent calls for; and, lastly, it constitutes a proper township line, connecting the township corners by a straight line, as required by the laws of the United States. The line x, y, z does not correspond with the courses and distances indicated by the government field notes. It is 86 rods too near the Minnesota state line at point z. It gives to plaintiff about 80 acres more land than his patent calls for, and apparently gives to all the owners of land in Brandon township adjoining the township line between a' and B more land than

they are entitled to under their patents.    The line between a'
and B  would  constitute  an  extraordinary line for a township
line, and that line has for many years been disputed by some of
the residents of Red Rock township as being  the  original gov-
ernment township line.    Therefore, a court would not be justi-
fied in holding the mounds found at x, y, z original government
mounds, except upon the most clear and  satisfactory  evidence
that they were, as a fact, placed at those points  by the govern-
ment surveyor at the time  of  the original  survey.    We fail to
discover such evidence in the record in this case.

Counsel for appellant contends that  the  evidence  of  Mr.
Vause quite conclusively  establishes  the fact that the line con-
tended for by the appellant is the one indicated in  the  govern-
ment  field  notes, as  shown  by  the  incidental  calls  therein.
There is some force in this contention.    Going north from cor-
ner common to sections 24, 13, 18, and 19, the  field  notes  say:
''North along the east boundary line of section 13, variation 12
degrees 40 minutes east, at 23  chains, dry run, 20 links  wide,
bears west; at 32 chains, dry run,  12  links  wide,  bears south-
west, and  unites  with  the  last  mentioned run.''    Mr. Vause
testified that measuring on the line a', x, y, the distances  cor-
responded  with  the  calls  in  the field notes to these two runs,
but that measuring on the Van Antwerp line, a' to B, the dis-
tances do not correspond  with  the  field notes, and that the two
runs come together some distance easterly of the Van Antwerp
line, instead of westerly  of  the  same, making  only  one  run
crossed by that line.    But it will be noticed that the  calls  are
incidental calls, in passing, and  not locative calls, and that,  to
give effect to such calls, the courses indicated in the field notes
must be disregarded.    While undisputed monuments that con-
stitute locative calls  will generally control  courses  and  dis-
tances, no such  effect will  ordinarily be  given  to  incidental
calls.    The  principle  applicable  to such calls is clearly stated
by the supreme court of Texas  in  Jones  in Jones  v. Andrews, 9 S. W.
Rep. 170.    In that case, on the trial  in  the  court  below,  the

"appellants asked the court to instruct the jury that a call for a natural object, such as a creek, or for an artificial object, such as a well-marked and long-established public road, will control course and distance, and also the lines of the survey, unless such lines are actually marked upon the ground." The court says: "The charge here asked forcibly illustrates the doctrine often laid down, that, while natural objects and artificial boundaries will generally prevail over course and distance, yet the former will often, from the nature of the case, be compelled to yield to the most inferior call. Everything being equal, the call for natural objects would have precedence, because most endurable, and less liable to change, and are supposed to be selected as land marks because of their immutability. This is only true when they are selected as locative calls, and are not then always absolute. When they are noted in the field notes as mere incidental calls, in passing, their reliability is weakened, and sometimes rendered wholly worthless. Distances called for between corners to creeks or roads, unless specially designated in such manner as to show the intention to make them locative, are not such, and will not ordinarily have precedence over a call for course and distance. The calls in the hunt for the creek and road are incidental, and, unless shown to be intended as locative, should not be so regarded, if inconsistent with other locative calls. Had the court given the charge asked, it would have been error." The doctrine that monuments, as locative calls, will generally control course and distance, grew up where such monuments were permanent objects, such as growing trees, well-defined highways, rivers, etc., and must necessarily be applied with some caution to mounds of earth easily made by any one in a prairie country. So, incidental calls to dry runs, sloughs, etc., in a prairie country, are too vague and uncertain to control course and distance in resurveying the exterior lines of a township, when the township corners are undisputed. Such calls may serve as aids in determining whether or not the section and quarter section cor-

ner mounds found within the township, claimed to have been made in subdividing the township, are the mounds established by the government surveyor. Hence, we held in Randall v. Burk Tp., 57 N. W. Rep. 4, that the surveyor; in resurveying the interior lines of a township, was not justified in disregarding what appeared to be government mounds, and establishing new mounds and lines 10 or 12 rods distant from mounds claimed to be old mounds, until he had made every effort to find the old government lines and corner, and that one of such means was to try his lines by the incidental calls indicated in the government field notes.

Again, it is contended that the fact that Mr. Van Antwerp found no mounds, or appearances of mounds, on the line run by him from points a' to B, a distance of four miles, except a quarter corner one-half mile south of point B, (about which there is some conflict in the evidence,) constitutes strong evidence against that line as the original government line. Had the original government mounds been fixed and permanent monuments, such as living trees, well-established highways, etc., there would be much force in such contention. But the absence, after many years, of mounds of earth easily made and obliterated by any one in a prairie country, is not a very important fact to be considered in establishing the original township line. We have examined with much care the cases relied upon by counsel for appellant in support of their position, but we do not think they establish any principle inconsistent with the views we have herein expressed. It is true that in McClintock v. Rogers, 11 Ill. 279, (a leading case,) the town line was, by a resurvey, deflected from a straight line between the township corners; but an examination of the case will disclose the fact that that was done to give to parties the amount of land to which they were entitled, and that the resurvey followed undisputed permanent monuments along the line, as established by the original survey and the government field notes. We do not wish to be understood, in this case, as

holding that where it is clearly established that the line as orig-
inally surveyed by the government surveyor, as shown by un-
disputed monuments on the ground, is not a straight line be-
tween the township corners, such line will prevail, though it
may conflict with the government field notes. But, before such
monuments can prevail, they must be shown, by clear and sat-
isfactory evidence, to have been placed in the position in which
they are found at the time of making the government survey,
or that they have for a long time been generally recognized as un-
disputed government monuments; and the finding of mere earth
mounds, long after the government survey was made, will not,
alone, establish the fact of their having been made by the gov-
ernment surveyor. In the case at bar, no such satisfactory
evidence has been adduced, in our opinion, as would warrant
a court in holding the line claimed by the plaintiff to be the line
established by the government survey. Therefore, we are of
the opinion that the findings and judgment of the court below
are correct, and the judgment is affirmed. All the judges con-
curring.