IVERSON, Respondent, v. JOHNSON, et al, Appellants.

(239 N. W. 575.)

(File No. 7184. Opinion filed December 19, 1931.)

C. R. Jorgenson, of Watertown, and Clarence Anderberg, of Sisseton, for Appellants.

Dana Babcock, of Sisseton, for Respondent.

ROBERTS, J. Plaintiff acquired title by a patent from the federal government to the northeast quarter of section 4, township 127, range 51, Roberts county, and defendant H. O. Johnson owns the southeast quarter of the same section. The defendant Martin Johnson is the lessee of the latter tract. The controversy in this action is as to the boundary line. The location of the quarter corner on the east line of the section is not in dispute. The matter in controversy involves the location of the center quarter corner of the section and the 80-rod mound on the boundary between the two quarters. The court entered a judgment for the plaintiff establishing the boundary in question and enjoining the defendants from trespassing upon the premises of the plaintiff. Motion for new trial was denied, and defendants appeal from such judgment and order.

The trial court in its findings of fact after locating and establishing the corners of the northeast quarter by courses and measurements from a known corner, the quarter corner on the east side of the section, made a finding to the effect that the cement monument or marker placed at the southwest corner of plaintiff's land is the location of the original center quarter corner of the section; that the 80-rod mound between the quarter sections of the parties is located at the point arrived at by extending a straight line in an easterly direction 1,345 feet from the center quarter corner; and that these points are established at the locations of the original government mounds and pits which marked the boundary between the two quarter sections in the original survey and which were in existence and plainly visible at the time that plaintiff entered and took possession of the northeast quarter. Defendants contend that the evidence does not sustain such findings, and that the court should have found that the west or center quarter corner and the 80-rod mound were lost monuments, and should have been established by a resurvey in the manner provided by statute.

Section 4 in which the tracts in controversy are located was surveyed in the month of June, 1928, by a surveyor employed by the defendants. It is the claim of the defendants that the center quarter corner of the section was entirely obliterated, and their being no evidence of its original location, the surveyor established the same by what is known as the intersecting method. The surveyor testified that, after locating or establishing the quarter corners on each side of the section, he ran a line from the quarter corner on the south to the quarter corner on the north side of the section, and also ran a line from the quarter corner on the east to the quarter corner on the west side of the section; that the point where the lines intersected was the correct location of the center of the section and that he marked its location by a stake; that the point where the lines intersected is 184.1 feet north of the cement marker placed by the plaintiff as the location of the southwest corner of his land and which the court found to be the location of the original mound and pits marking such quarter corner. He further testified that when he made the survey he had the original field notes, and consulted them for the purpose of determining courses and distances.

Plaintiff made homestead entry upon the northeast quarter in 1894, and Halver Larstad of the adjoining southeast quarter in 1892. The government mounds and pits marking the boundary between the quarter sections were then clearly visible, and it is undisputed that they were not in a direct line east and west. Halver Larstad, a witness for the defendants, testified that all the mounds and pits were visible at the time he made homestead entry, and that he saw the mound and pits marking the center of the section; that he and the plaintiff agreed that it was the center quarter corner and never had any dispute with reference to its location; that in the spring of 1894 he located the northwest corner of plaintiff's land and measured the distance along the west side of the northeast quarter from such corner to the center of the section; and that he found the distance to be about 164 rods. The distance from the northwest corner of plaintiff's quarter section to the place which witnesses for plaintiff testified was the center of the section and which was established as the center in the court's findings is 163 rods and 6½ feet. Referring to the 80-rod mound, Larstad testified that it was south of a straight line between the southwest and the southeast corners of plaintiff's land. It also appears from the evidence that the plaintiff piled stones on his land north of the 80-rod mound. Several witnesses testified that this middle mound was south of this stone pile, but there was a divergence in the testimony of the several witnesses as to the exact distance. Plaintiff testified that it was 3 rods. The trial court established its location at the south edge of the stone pile.

The center of the section, the 80-rod mound, and the measurements along the boundaries between the quarter sections of the parties hereto fixed and established by the trial court do not correspond with those appearing in the field notes of the original survey introduced in evidence. The field notes indicate that these markings and the quarter corner on the east side of the section were placed in a direct line east and west. The Supreme Court of Minnesota, in Chan v. Brandt, 45 Minn. 93, 47 N. W. 461, referring to inaccuracies in an original survey and corretions thereof, said: "The boundaries, as established by the government surveyors, and returned to and accepted by the government are unchangeable, and control the description of lands patented. And it is well settled that mistakes in the surveys cannot be corrected by the judicial

department of the government. Cragin v. Powell, 128 U. S. 691, 9 S. Ct. 203 [32 L. Ed. 566]."

■ This court, in Coulter v. Gudehus, 30 S. D. 616, 139 N. W. 330, 333, after reviewing the holding in Hanson v. Township of Red Rock, 4 S. D. 358, 57 N. W. 11, and citing other decisions of this court concluded: "A reading of all the above decisions of this court will show that the location of a disputed corner is an open question to be determined from all the evidence, and, when determined, it controls. There is no hint that from the mere fact that a certain corner is 'questioned' it becomes an 'uncertain, doubtful or lost corner,' and that the 'government field notes will control in determining the location of' it. We approve of the following rule laid down in Knoll v. Randolph, 3 Neb. (Unof.) 603, 94 N. W. 964: 'The rule is that, where the government corner cannot be located by clear and satisfactory evidence, the field notes of the government survey are to be taken as prima facie evidence of the location of such corner.' It follows that the converse is true— where the location of a government corner is established by clear and satisfactory evidence, such location must control over the field notes or over any question of where the corner should have been located by the surveyors."

See also Lehman v. Smith et al., 40 S. D. 556, 168 N. W. 857; Byrne v. McKeachie, 34 S. D. 589, 149 N. W. 552; Mason v. Braught, 33 S. D. 559, 146 N. W. 687.

Corners of an original survey, if they can be located or the places where they were originally located established, are conclusive on all persons owning or holding with reference thereto, notwithstanding these locations are not such as designated in the field notes.

■ There was some conflict in the evidence, but after a careful review of the evidence we are unable to conclude there is a clear preponderance of the evidence against the findings of the trial court and in support of the contention of the defendants that the center quarter corner and the middle mound were lost monuments.

The judgment and order appealed from are affirmed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.