**Alvin BLOCK and Margaret Block, Plaintiffs and Appellants,**

v.

**Henry HOWELL, Hazel Howell; Vance E. Miller, Jr., Marilyn A. Schornack; Judson O. Mabee; Leonard E. Garness, Sheila Garness; John R. Wheeting; Olive Justin Frederickson, L. Lewis Feuerstein, Delores E. Feuerstein; Gary W. Gange, Sally Gange, Linda L. Gange; Wilbur E. Gange, Myrtle A. Gange; W.J. Rivett, Elene M. Rivett; Dr. Robert Randall; Robert W. Burnette, Mary L. Burnette; Ruth E. Vander Linden; Rudolph G. Dahl, Wava P. Dahl; Carol MacNally, Lois Sperl; Geo. M. Handsen; Bradley A. Rountree, Thomas B. Rountree, Michele Rountree; Nancy Ruckdaschel; James B. Rountree, Joan S. Rountree; Hattie Cook; Tilda Bloom; Mabel E. Rock; Nancy J. Berry Henrichsen, Marylin Rekow, Jone J. Berry; Sondra L. Odland; Lillian J. Prochnow; Mary C. Schiley, Richard N. Schiley, Helen N. Schiley, Marjorie Ann Schiley, Jeanne Schiley, David Schiley, Stephen J. Bogenrief; Charles Parks, Pearl Parks; LuVerne V. Carlson, Phyllis Carlson; Dayle F. Meyer, Marie C. Meyer; George A. Thompson; Ruth E. Thompson, Defendants and Appellees.**

Nos. 14281, 14292.

Supreme Court of South Dakota.

Argued Feb. 15, 1984.

Decided April 4, 1984.

Max A. Gors of Gors & Braun, Pierre, for plaintiffs and appellants.

Kennith L. Gosch of Bantz, Gosch, Cremer & Peterson, Aberdeen, for defendants and appellees.

MORGAN, Justice.

Alvin and Margaret Block (Block) purchased a farm in 1952 from which a lakefront development of thirty-five lots called Pleasure Park had been subdivided in 1921. The boundary between the Block farm and the rear (northwest) boundary of Pleasure Park has been disputed since Block purchased his property. In March of 1981 Block sought a judicial determination of the boundary pursuant to SDCL ch. 21–40 and defendants filed an answer and counterclaimed. After a trial in September of 1982, the Day County Court, Fifth Judicial Circuit of South Dakota entered judgment in favor of defendants, the owners of the thirty-five Pleasure Park lots (Pleasure Park owners). Block appeals. We affirm.

Block claims that the boundary is delineated by a row of separate fences, trees, shrubs, a garage and some "iron pipe markers." This line falls partially to the southeast of a private road that runs along the back of the Pleasure Park lots. The Pleasure Park owners contend that the boundary lies along a woven wire fence that runs primarily on the northwest side of the road. Block bases his claim upon his deed, his understanding when he purchased the farm and a survey run by his surveyor George Gebhart. Pleasure Park owners assert affirmative defenses including ownership by title, adverse possession, laches and estoppel. Pleasure Park owners' counterclaim and request trespass, intentional injury and punitive damages as the result of an electric fence that Block strung along what he believed to be the boundary line.

The only issue Block raises on appeal is whether the trial court's finding that the original monuments and boundaries cannot be determined and the trial court's conclusion that the Pleasure Park lots extend from the lake to the woven wire fence are clearly erroneous. SDCL 15–6–52(a).

▮ In *Estate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970), this

court defined the scope of the clearly erroneous standard:

> In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

*See also M & M Contracting, Inc. v. Midwestern Homes, Inc.*, 334 N.W.2d 223 (S.D. 1983). The clearly erroneous standard applies to boundary disputes. *West v. Caron*, 299 N.W.2d 197 (S.D.1980). Upon review of the record, we conclude that the trial court was not clearly erroneous.

▮ Conflicting evidence and testimony concerning the disputed boundary were presented at trial. Block presented the surveys and expert testimony of George Gebhart, a retired, licensed engineer and land surveyor, who concluded that the line of fences, trees, shrubs and "metal pipe markers" between the woven wire fence and the Pleasure Park owners' cottages and cabins indicated the platted boundary. Gebhart employed two methods in his attempt to locate the boundary line. First, he claimed that the iron pipe markers and the topographical features listed above lined up within a six-inch strip of his asserted boundary and he proffered this as evidence that the iron pipe markers and his boundary matched the original surveyor's intention. In actions brought under SDCL ch. 21–40 the trial court must locate boundaries if possible by reference to well-known permanent landmarks. SDCL 21–40–6. *See, Wentzel v. Claussen*, 26 S.D. 89, 127 N.W. 621 (1908); *Larson v. Township of Edison*, 41 S.D. 168, 169 N.W. 523 (1918). Gebhart assumed that the iron pipe markers were intended as lot corners, or monuments [1] indicative of the true boundary.

---

1. Monuments are stakes and markers placed by the original government surveyor to indicate section corners and quarter section corners. Natural objects may constitute fixed or permanent monuments. *Randall v. Burk Township*, 4 S.D. 337, 57 N.W. 4 (1893). In surveying and subdividing townships government surveyors were required to establish section corners by "a

Monuments control over courses and distances and over survey notes in the absence of survey markers. *Iverson v. Johnson,* 59 S.D. 313, 239 N.W. 757 (1931); *Randall v. Burk Township,* 4 S.D. 337, 57 N.W. 4 (1893); *Arneson v. Spawn,* 2 S.D. 269, 49 N.W. 1066 (1891). Gebhart admitted at trial that this approach depended entirely upon the accuracy of the "iron pipe markers." These markers did not line up exactly with the original plat and could not be located by following the original surveyor's notes. Despite these major inconsistencies and despite testimony at trial indicating that the markers had been put in by the lot owners, Gebhart remained certain that they indicated the boundary. In order to bring the markers and topographical features into line with the plat and survey notes Gebhart assumed the original surveyor made errors, either in measuring or in recording his information. Gebhart then remeasured and reshot the survey to make the ground and the boundary as he saw it fit as closely as possible to the original plat. He changed measurements and angles that were clearly indicated on the original plat. Block's reliance upon the rule stated in SDCL 43–18–7 and the cases that follow from it is unfounded when the evidence as a whole is considered in light of the entire statute, which provides:

> In retracing lines or making the survey the surveyor shall take care to observe and follow the boundaries and monuments as run and marked by the original survey, but shall not give undue weight to partial and doubtful evidence or appearances of monuments, the recognition of which shall require the presumption of marked errors in the original survey, and he shall note an exact description of such apparent monuments.

Gebhart places too much weight on partial and doubtful evidence and markers that appear to be monuments. Recognition of Gebhart's boundary and acceptance of his theory require the presumption that the original surveyor committed errors and that Gebhart has a clearer vision of what was intended by the original plat than the man who made it had. SDCL 43–18–7 requires the opposite presumptions.

Gebhart's second approach was based on linking his plat of Pleasure Park onto surveys of Pebble Beach and Middle Beach, two adjoining subdivisions he had previously surveyed. Gebhart admitted at trial, however, that this approach depended upon the placement of a section line as he had asserted it in a prior, 1975, litigation, in which the trial court rejected Gebhart's placement of that line.

Lon Anderson, Pleasure Park owners' surveyor and expert also testified at trial. Anderson made several attempts, to locate the Pleasure Park boundaries by bringing his survey in from different directions and by following the original plat and the original surveyor's notes. Anderson formulated and followed several assumptions in his efforts to find original markers. He was not satisfied that any of his attempts or surveys based on the original plate correctly located the northwestern boundary of Pleasure Park. Reference to the original surveyor's notes likewise afforded no help in determining the boundaries of Pleasure Park. The trial court found as a fact that "the plat ... as filed does not show any permanent monuments set and the boundaries of Pleasure Park cannot be determined from the information given on the plat."

To be considered lost, lines, corners and markers must be so completely lost that they cannot be replaced by reference to any existing data or other sources of information. *Mason v. Brought,* 33 S.D. 559, 146 N.W. 687 (1914). Anderson exhausted all available information and the

---

mound, four pits and a stake"; and a quarter section corner by "a mound, two pits and a stake or post[.]" 4 S.D. at 351, 57 N.W. at 9. Visible marks or indications left on natural or other objects indicating the lines and boundaries of a survey, are monuments. They include posts, pillers, stone markers, cairns, fixed natu-

ral objects blazed trees and watercourses. Any natural or artificial physical object on the ground which helps establish the location of a line is a monument. Black's Law Dictionary 909 (1979). "A monument is an accessory that is presumed to occupy the exact position of a corner." SDCL 43–20–2(6).

original plat and survey in his attempt to locate the Pleasure Park boundaries in the field. When his field attempts failed, he prepared a milear overlay of the boundary between Block's farm and Pleasure Park incorporating the exact distances and angles indicated on the original plat.

■ Anderson's purpose was to reestablish the original survey as closely as possible to the intent of the original surveyor. Part of the problem in locating the boundaries was that the lakeshore, from which certain original and crucial measurements were made, had subsequently been altered and some original monuments displaced. Anderson reasoned that even if the runs [2] which angled from the lake to the back of Pleasure Park had changed and were useless in establishing the back boundary, that boundary itself was unaltered. He drew the back boundary as it was indicated on the original plat on his overlay, placed it over his scaled drawing of the woven wire fence and the distances and angles fit. In 1,074 feet there was a difference of only two-tenths of a foot and the fence took the same ten degree turn indicated on the overlay and the original plat. A deflection angle of forty degrees and seven seconds indicated on the original plat and therefore incorporated in the overlay matched the angle in the fence as it is shown on Anderson's scaled drawing and as it stands in the field.

■ When government monuments cannot be found and boundaries cannot be resurveyed from the original survey and plat, topographical features may be considered to relocate an original boundary. *Wentzel, supra; Larson, supra; Iverson supra*. The monument and topographical features that Gebhart and Block relied upon were discredited at trial, while Anderson's argument asserting the woven wire fence as the original boundary appears to be based upon sound reasoning and to be an honest professional attempt to find the original line. It is ironic that Block's argu-

ment for consideration of topographical features in the absence of monuments and an effective plat pulls so hard toward the other side when the relationship between the overlay and the woven wire fence is considered.

■ The trial court's resolution of this case turned upon its evaluation of two surveyors and their conflicting testimony. *See Rapid City v. Hoogterp*, 85 S.D. 176, 179 N.W.2d 15, 18 (1970) and *West v. Caron, supra*. The court viewed the evidence, watched the witnesses testify and visited the site of the disputed boundary. *See Mason v. Brought, supra*. Findings of fact will not be set aside unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. SDCL 15–6–52(a). This court set out its approach to the clearly erroneous standard in *Matter of Estate of Kranig*, 291 N.W.2d 781, 783 (S.D.1980), where it stated:

> In our review here the issue is not whether we agree with the decision of the trial court nor whether we would reach the same or a different decision were we to collectively review the record. We may not set aside findings of fact unless they are "clearly erroneous" and must give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

A review of the evidence, the trial transcript, and the exhibits clearly shows that the trial court's findings were not clearly erroneous. Appellants failed to demonstrate that the trial court's evaluation of the evidence was erroneous.

■ A review of the evidence and testimony presented in relation to the Pleasure Park owners' counterclaim leaves the impression that deference must also be paid the trial court on this issue. The transcript indicates that many of the defendants did not assert damages, the damages that were asserted were minimal and the damage

---

**2.** The terms "runs and calls", "course and distances" and "angles and distances" are synonymous. They all refer to the angles and scaled distances indicated on a plat and must be followed in order to establish the exact boundaries.

that arose from Block's placement of the electric fence resulted from actions taken while Block was under the honest assumption that he owned the land upon which he placed the fence. *See Baldwin v. Bohl,* 23 S.D. 395, 122 N.W. 247 (1909); *Shippy v. Hollopeter,* 304 N.W.2d 118 (1981).

We affirm the trial court's determination of the boundary and its disposition of the counterclaim.

All the Justices concur.