RANDALL *et al.* V. BURK TOWNSHIP, OF MINNEHAHA COUNTY.

1.  A stipulation made on the trial of a case before the court, in a cause properly triable by the court, that the only issue to be tried and determined by the court is whether or not a certain specified resurvey was made in accordance with the government survey, and that no objection will be made to the sufficiency of the complaint, or the jurisdiction of the court, and that judgment may be rendered by the court in favor of the party it finds entitled thereto, does not constitute a submission of the case to arbitration, but only has the effect of limiting the issues to be tried.

2.　When the only issue tried by the court was as to whether or not a certain survey corresponded with the original government survey, the specifications in the statement as to the particulars in which the evidence was insufficient to justify the findings are stated as: (1) It appears from the evidence that the resurvey was not made in accordance with the original survey; (2) it appears from the evidence that the corners of the sections and quarter sections of Burk township, as established by the resurvey, do not correspond with the original government corners. *Held* sufficient, under the facts of this case. Kellam, J., dissenting.

3.　This court will presume, in the absence of a "further or additional abstract," that all the evidence material to the questions presented to the court, contained in the bill of exceptions or statement, is incorporated into the abstract, and that the bill of exceptions or statement contains all the evidence the parties or the trial court deemed material or essential to a proper determination of the questions presented by the specifications of error contained in the bill of exceptions or statement.

4.　The last clause of Section 5237, Comp. Laws, which provides that "any question of fact or of law decided upon trials by the court or by referee, may be reviewed when exceptions to the findings of fact have been duly taken by either party and returned," requires this court, in a cause tried by a court or referee, to review the questions of fact, as well as law, where proper exceptions have been taken in the court below.

5.　On such review of the evidence, this court will presume that the decision of the trial court or referee upon the weight of such evidence is correct; and it is only when this court is satisfied that there is a clear preponderance of the evidence against such decision that such presumption will be overcome, and the decision of the trial court or referee reversed.

6.　The rule is well settled that on a resurvey of land originally belonging to the United States, and which it has caused to be surveyed under its authority, such resurvey must follow the boundaries and monuments, as run and made by the original government survey, if the monuments placed by the government, in making the survey, to indicate the section corners and quarter section posts, can be found, or the places where they were originally placed can be identified.

7.　The evidence in this case reviewed, and the conclusion arrived at by the court that there was a clear preponderance of the evidence against the findings of the court below, which found that the resurvey was in accordance with the original government survey, and the decision of the court below is reversed.

(Syllabus by the court.　Opinion filed Nov. 24, 1893.)

Appeal from circuit court, Minnehaha county.   Hon. F. R. AIKENS, Judge.

Action by Polina Randall and others against the township of Burk, in Minnehaha county, and others, for an injunction. There was judgment for defendants, from which, and an order denying a new trial, plaintiffs appeal.   Reversed.

The facts are stated in the opinion.

*Bailey & Voorhees* and *Winsor & Kittredge,* for appellants.

In this state, in cases of an equitable nature tried before a court or a referee, the facts, as well as the law, may be reviewed by this appellate court.   The findings of the lower court in this case are therefore not conclusive upon this court, and this case may be determined in this court upon the evidence practically the same as if the hearing in this court were the original trial of the case.   Sec. 5257, Comp. Laws; Butts v. Colton, 6 Dak. 306; Catlin v. Henton, 9 Wis. 476; Gills v. Rice, 13 Wis. 549; Felch v. Lee, 15 Wis. 265; Felton v. Gregory, 16 S. W. Rep. 479; Benne v. Schnecko, 100 Mo. 250 13 S. W. Rep. 82.

If the stakes or monuments placed by the government in making a survey to indicate the section corners, and quarter posts can be found, or the place where they were originally placed can be identified, they are to control in all cases.   Arneson v. Spawn, 49 N. W. Rep. 1066; Robinson v. Moore, 4 McLean, 279; Esmond v. Tarbox, 7 Me. 61; Hall v. Davis, 36 N. H. 569; Hunt v. McHenry, Wright, 599; Bayless v. Rupert, Wright, 634; Bruckner's Lessee v. Lawrence, 1 Doug. 19; Climer v. Wallace, 28 Mo. 550; Tiedman on Real Prop., § 832; Sedgwick & Wait on Trial of Title to Land, § 862.   Even the United States itself cannot change the boundaries or monuments of surveyors made under its authority after vested rights of settlers have interposed.   Climer v. Wallace, 28 Mo. 556; Lindsay v. Hawes, 2 Black, 554; Boardman v. Reed, 6 Pet. 341; Jackson v. McCall, 10 Johns, 377; Lay v. Neville, 25 Cal. 545; Smith v. Shackleford, 9 Dana, 452; McCoy v. Calloway, 3 Ohio,

283; Nixon v. Porter, 34 Miss. 697; Smith v. Pruitt, 2 A. K. Marsh, 158; Morton v. Folger, 15 Cal. 275; Stroud v. Springfield, 28 Texas, 649; Yates v. Shaw, 24 Ill. 367.

*Keith & Bates*, for respondents.

The agreement entered into on the trial that the entire question should be left to the decision of the judge amounted to a submission to arbitration. The decision of the judge was final, and no appeal would lie therefrom, there being no stipulation in the agreement providing for an appeal. Gwunn v. O'Hern, 72 Pa. Stat. 29; Hughes's Administrator v. Peaslee, 50 Pa. St. 257; Bank v. Loan and Trust Co., 22 Wis. 222.

The question of the insufficiency of the evidence to justify a decision, cannot be raised in this court, for the reason that the appellants did not, either in their notice of intention to move for a new trial or in their bill of exceptions, specify any particulars in which the evidence was alleged to be insufficient. Hayne on New Trial and Appeal, §§ 150, 259; Gaines v. White, 47 N. W. 524; Thorne v. Hammond, 46 Cal. 530; Doherty v. Mining Co., 50 Ind. 187; Coveny v. Hale, 49 Id. 552. The question of the insufficiency of the evidence cannot be considered for the reason that the appellants' abstract upon appeal does not state that the evidence set out therein is all the evidence upon which the case was heard, or that it contains all the evidence set out in the bill of exceptions. Walrod v. Flanigan, 39 N. W. 645; Shattuck v. Burlington Ins. Co., 43 N. W. 228; Valley City Land and Irr. Co. v. Schone, 50 N. W. 56; Noyes v. Lane, 48 Id. 322.

CORSON, J. This was an action to enjoin the defendants from laying out and opening certain highways along section lines in Burk township, in said county, under a resurvey of said township in 1887–88 by one E. H. Van Antwerp, deputy county surveyor of said Minnehaha county. Judgment for defendants. A motion for a new trial was made and overruled, and the plaintiffs appealed from the judgment and order.

1.  On the trial of the case the following stipulation was entered into by the counsel of the respective parties: "It is stipulated and agreed, in open court, by and between the parties to this action, that the only issue to be tried and determined by the court is whether the survey made by E. H. Van Antwerp deputy county surveyor of Minnehaha county, of the line in Burk township, in the year 1887, is in accordance with the government survey thereof, and that no objection will be made to the sufficiency of the complaint for said purpose, or to the jurisdistion of the court. It is further stipulated and agreed that, if the court finds said survey by E. H. Van Antwerp to be in accordance with the government survey, he shall render judgment for the defendant, and, if he finds it is not in accordance with the government survey, he shall render judgment for the plaintiffs." The learned counsel for the respondents contends that the stipulation amounts to a submission to arbitration; that the decision of the judge was final, and no appeal will lie therefrom, there being no agreement in the stipulation providing for an appeal by either party. But we are of the opinion that this view of the agreement cannot be sustained. The action was an equitable one, that was properly tried by the court without the intervention of a jury; and the effect of the stipulation, in ovr view, was to waive all technical questions, and try the case upon the merits alone. That this was the object clearly appears from the language of the stipulation. It is first stipulated that the only issue to be "tried and determined by the court is" as to the survey; and, second, "that no objection will be made to the sufficiency of the complaint for said purpose, or to the jurisdiction of the court." This language clearly indicates that it was the court that was to try the case and render the judgment. No intimation is contained in the agreement of any intention to constitute the judge an arbitrator or to take the case from the court; but, on the contrary, "all objections to the jurisdiction of the court" were waived, and the court was required to render judgment, not the judge, as

referee or arbitratior. As it was the court that was properly trying the case without the intervention of a jury, we fail to see anything in the stipulation inconsistent with his continuing the trial as a court, and rendering judgment as a court. The cases from Pennsyvania cited by the learned counsel for respondents were common law actions properly triable by a jury. In the case of Guinn v. O'Hern, 72 Pa. St. 29, the action was on trial before a jury when the stipulation was made, and thereupon the jury was discharged, and the judge decided the case at his chambers, rendering an opinion, but no judgment. The stipulation was that the "court shall take the papers and evidence offered in the case to his chambers, * * * and shall determine all questions of law and fact arising in the case, * * * and the court shall file an opinion," etc. The supreme court says: "At the conclusion of the trial of the cause below, the counsel chose to take the case from the jury, by agreeing that the judge should take the papers and evidence given in the case to his chambers. * * * This was nothing but a reference of the facts, as well as the law, to the judge, as an arbitrator." The court further says that "it was no longer a trial in due course of law, with the remedy by exceptions to the charge or writ of error. There was no charge to be excepted to, and no verdict. In its place there was merely any opinion of the court upon the facts, without even the reservation of the right to except, and to sue out a writ of error." In Hughes' Adm'r v. Peasley, 50 Pa. St. 257, the stipulation was that the case be submitted to "his honor, Judge Graham, upon the depositions and admitted facts; he to render such judgment thereon as he shall deem right and proper." This was also a common law action properly triable by a jury. It is contended by the learned counsel for the appellants that, under the constitution and laws of Pennsylvania; courts are not anthorized "to impair the rights of trial by jury, or to dispense with or to supply the use of any form of proceeding which shall be made necessary by any act of assembly," and that no provision is made by law for

the trial of common law actions, except by a jury. The opinion of the court in Gwynn v. O'Hara, *supra*, would seem to indicate that such was the fact. But, whether such is the fact or not, the cases are not sufficiently analogous to the case at bar as to have much weight in its determination. In Walworth Co. Bank v. Farmers Loan & Trust Co., 22 Wis. 222, the stipulation was "that the action be referred to Hon. Wm. P. Lyon, as sole referee." It could not reasonably be claimed that this was other than a reference, as it was made to an individual by name, as "referee." We are of the opinion that in the case at bar the stipulation had only the effect to limit the issues to be determined by the court, and to eliminate from the case all technical objections to the proceeding.

2. The counsel for the respondents further contend that the question of the insufficiency of the evidence to justify the decision is not properly before this court and cannot be considered by it, for the reason that the appellants have not, either in their notice of intention to move for a new trial, or in their bill of exceptions, specified the particulars in which the evidence is claimed to be insufficient. In the bill of exceptions, the appellants' specification of the insufficiency of the evidence is as follows: "(1) It appears from the evidence that the Van Antwerp survey was not made in accordance with the original government survey of Burk township. (2) It appears from the evidence that the corners of the sections and quarter sections in Burk township, as established by the Van Antwerp survey, do not correspond with the original government corners." The object of the specifications in the notice of intention, bill of exceptions, or statement, is to inform the opposing party in what respect the appealing party deems the evidence insufficient, that the opposing party may see that all the evidence he deems necessary or material upon the point suggested may be incorporated into the bill of exceptions, and that counsel may be properly prepared to discuss the questions presented, and the court properly advised of the nature of the questions to be

considered and decided.    Therefore, when the specifications are
sufficient to occomplish these purposes, we think  they are suf-
ficient.    In the case at bar, substantially the only question sub-
mitted to the trial court was, did  the  surveyor, in his resurvey
of Burk township, follow the government  survey, or did he es-
tablish new and different corners from those established by the
original government survey?   We are of  the  opinion that the
specifications in the bill of exceptions are as full and specific as
the nature of the case admitted of, and are sufficient.

3.    Counsel for  the  respondents  further  contend  that the
abstract does not state that the evidence  therein is all  the evi-
dence upon which the case was heard, or that it contains all the
evidence set out in the bill of exceptions.    If the  abstract does
not contain all  the  evidence  set  out in the bill of exceptions
deemed necessary by the opposing party to fairly  present the
case, this  could  have  been  supplied  by the respondents by a
further or additional abstract, as  they  might deem  necessry,
under  Rule 13  of  this court.    This court has recently held, in
the case of Holcomb v. Keliher, 54 N. W. Rep. 535, that  under
the practice in this state it is not necessary to set out all the ev-
idence given at the trial, in a  bill  of  exceptions or statement,
but only  so  much  thereof as may be necessary to present the
exception as to the sufficiency of  the evidence upon the specifi-
cations in the  notice of  intention, bill of  exceptions or state-
ment.    There may be other evidence in the case entirely unnec-
essary, as not bearing upon the questions presented, and hence
should be omitted from the bill of exceptions.    Hence, the trial
court could not certify that such a  bill  of  exceptions or state-
ment contained all the  evidence  in  the  case, and the abstract
could  not  truthfully  state that all the evidence in the case was
contained  therein.    Hidden v. Jordan, 28 Cal. 312.    This court
will presume, in the absence of a  "further  or  additional ab-
stract," that  all  the  evidence  material  to  the questions pre-
sented to this court, contained in the bill of exceptions or state-
ment, is incorporated into the abstract, and that  the  bill of ex-

ceptions or statement contains all the evidence the parties deemed essential to a proper determination of the questions presented by the specifications contained in the bill of exceptions or statement. The sections of our statute relating to bills of exceptions and statements are substantially the same as those contained in the California code, and will be presumed to have been adopted with the construction placed upon them by the courts of that state.

4. Counsel for respondents also contend that it is sufficient for the purposes of this case, to show that there is a substantial conflict in the evidence, as the rule is that where there is a conflict the appellate court will not disturb the findings of the court below. In this contention the learned counsel have evidently overlooked the change made in the practice act of this state by the amendments of 1887. By the last clause of Section 24, Chap. 30, of the laws of that year, (now Section 5237, Comp. Laws,) it is provided that "any questions of fact or of law decided upon trials by the court or by referee, may be reviewed when exceptions to the findings of facts have been duly taken by either party and returned." The chapter was copied substantially from the statutes of Wisconsin, where the provision quoted has been in force since 1860. This provision was construed by the supreme court of that state in Snyder v. Wright, 13 Wis. 689; but the construction given to it is so clearly stated by COLE, J., in Fisher v. Trust Co., 21 Wis. 73, we quote from that opinion. The court says: "This cause was tried before a referee; and therefore it becomes our duty, under Section 16, Chap. 264, Laws 1860, to examine the testimony, and to decide questions of fact according to the weight of evidence. It is very obvious that this statute has changed the practice in this particular, since, before its adoption, it was a familiar and well-settled rule that the appellate court would not disturb the finding of a referee or a judge, in common-law actions, upon questions of fact, upon mere preponderance of testimony. But the law now requires, in cases tried by the court

or by a referee, that this court should review questions of fact, as well as of law, decided by the court or referee, where proper exceptions have been taken, See the case of Snyder v. Wright, 13 Wis. 689." The legislature of the late territory having incorporated the provisions of the statute of that state into the law of this territory subsequent to those decisions, is presumed to have adopted it with the construction placed upon it by the highest court of that state. The rule laid down by Mr. Justice Cole is probably a little too broadly stated, as now understood by that court. It will be noticed that the learned judge in that case uses the language, "to decide questions of fact according to the weight of the evidence." This is not strictly correct, as this court will not decide the case upon the weight of evidence, as a trial court may do, but will only reverse the decision of the trial court where there is a clear preponderance of evidence against the decision of the court below. The presumption is in favor of the decision of the trial court upon the weight of evidence, which this court will respect, and therefore it is only when this court finds there is a clear preponderance of evidence against such a decision that the presumption above stated will be overcome. It becomes our duty, therefore, not only to determine if there is a substantial conflict in the evidence, but to determine the case upon the weight of evidence, having the above qualification in view. While we may, as did Justice Dixon in Snyder v. Wright, *supra*, deprecate the passage of the law, it is our duty to follow it, while it remains the law.

Having disposed of the preliminary questions, we now proceed to examine the merits of the case, and determine whether or not the conclusions reached by the learned circuit judge are against the preponderance of the evidence. A brief statement of the undisputed facts may be necessary to a full understanding of the questions presented by the evidence. In 1862 the exterior lines of Burk township were surveyed under the authority of the United States, and in 1864 the township was subdivided into sections and quarter sections under the same authority,

but by a different surveyor. No settlements appear to have
been made in that township until 1872, and subsequent thereto.
The township was settled up slowly, and parties continued to
take claims until 1878. It seems that many of the early set-
tlers required, or at least secured, the aid of surveyors, in or-
der to find the lines of tracts on which they wished to settle.
Some of these surveyors made new mounds at corners estab-
lished by them at different times, as new locations were made,
extending over a number of years. Hence, there has arisen
some uncertainty in the township as to where the original cor-
ners were established by the government survey of the interior
lines of the township. In view of this uncertainty or claimed
uncertainty, the trustees of Burk township in 1887 procured a
new survey of the interior lines and corners of the town to
be made by one Van Antwerp, deputy county surveyor of said
Minnehaha county. In making this resurvey, and establishing
the lines and corners, Van Antwerp states he followed the orig-
inal field notes as to courses and distances, and that he was un-
able to find within the township any of the old original govern-
ment mounds. By his resurvey, the corners established by
him were in many instances from 10 to 20 rods distant, north-
westerly or southwesterly, from the old government corners as
claimed by some of the settlers, and which some of the settlers
have regarded as the true corners for many years. As will be
readily seen, such a change of lines and corners would make
necessary a change in the section line highways, and in other
respects make a material change in the quantity of land claimed
by different parties; some getting less, and some more,
than the area originally claimed by them. The rule is well
settled that in a resurvey of land originally belonging to the
United States, and which it has caused to be surveyed under its
authority, such resurvey must conform to the survey made un-
der the authority of the government, if the mounds and corners
of the original government survey can be identified. In Arneson
v. Spawn, 49 N. W. Rep. 1066, this court said: "If the stakes

and monuments·placed by the government in making the survey
to indicate the section corners and quarter section posts can be
found, or the places where they were originally placed can be
identified, they are to control in all cases.'' And in Climer v.
Wallace, 28 Mo. 556, the court says: ''The corners established
by the original surveyors under the authority of the United
States could not be altered, whether properly placed or not;
and no error in placing them could be corrected by any survey
made by individuals, or by any surveyor deriving his au-
thority from the laws of the state.'' See, also, Hess v. Meyer,
73 Mich. 259, 41 N. W. Rep. 422. In this case, the appellant
insists that Van Antwerp, in making his resurvey, disregarded
recognized corners, boundary lines, and improvements of every
kind, and made an entirely new survey of the interior lines of
the whole township. Respondents virtually admit that he
made an entirely new survey, but contend that he was justified
in so doing, as there were no original government corners or
mounds that were established by the government survey known
to be existing at·the time he made his survey, except corners
on the exterior township lines, and that he was compelled to
make the survey from the government field notes by courses
and distances, taking as his initial point the recognized south-
east corner of the township. Mr. Van Antwerp, in his testi-
mony, gives a detailed account of the manner in which he made
the survey, and sums up the whole as follows: ''When I got
through surveying that township, it was surveyed according to
the government survey, as shown by the field notes. It was
surveyed and chained accurately in all instances. The corners
and sections were established by me as correctly as I could
establish·them, and also the quarter sections through the town-
ship. * * * I noted the quarter corner between sections 4
and 5 that was 16 rods north and 27 rods east, and there was a
mound there with a foot and a half base, and six inches high,
with three pits. ·All that I could learn about the mound was
that they said they had found it there, but knew nothing more

about it. It did not have the appearance of a government mound, and is not in the place called for by the field notes, according to the government survey." Mr. Van Antwerp also admits that he did not pay any attention to the topography of the country, and gives as a reason that there were no natural objects that could constitute fixed or permanent monuments, the country being generally a prairie country. The law of this state upon resurveys, material to this case, is contained in Sections 691, 693, 694, Comp. Laws, which reads as follows: "Sec. 691. The resurvey and subdivision of lands by all surveyors shall be according to the laws of the United States, and the instructions issued by the officers thereof in charge of the public land surveys in all respects." "Sec. 693. The courses shall be taken according to the true meridian, and the variation of the magnetic needle therefrom shall be noted, and also when any material change therein shall occur. Sec. 694. In retracing lines or making any survey he shall take care to observe and follow the boundaries and monuments as run and marked by the original survey, but shall not give undue weight to partial and doubtful evidences or appearances of monuments, the recognition of which shall require the presumption of marked errors in the original survey, and he shall note an exact description of such apparent monuments." It is conclusively shown from the evidence of Mr. Van Antwerp that, in making the resurvey, he relied entirely upon the courses and distances designated in the field notes of the government surveyor, and that he did not establish the corners by this survey at any of the points except one, indicated by the old mounds, claimed to be such by the early settlers, but, as before stated, established them from ten to twenty rods therefrom. Mr. Van Antwerp also admits that he paid no attention to the topography of the country, or to the courses and distances to natural objects referred to in the government field notes as existing near some of the boundary lines as originally surveyed.

It is contended by the counsel for the respondents that he

was not required to take notice in his resurvey of these natural objects, for the reason that the law does not require the government surveyor to note them in the field notes, and calls our attention to Section 2395, Subd. 7, Rev. St. U. S., which reads as follows: "Every surveyor shall note in his field book the true situation of all mines, salt licks, salt springs, and mill seats which comes to his knowledge; all water courses over which the line he runs may pass; and also the quality of the lands." But Section 2399, in the same chapter, provides as follows: "The printed manual of instructions relating to the public surveys, prepared at the general land office, and bearing date February twenty-second, eighteen hundred and fifty-five, the instructions of the commissioner of the general land office, and the special instructions of the surveyor general, when not in conflict with such printed manual, or the instructions of the commissioner, shall be taken and be deemed to be a part of every contract for surveying the public lands." These instructions are not in evidence, but this court must presume, we think, that the government surveyor, in making the original survey, followed the instructions of the land department, and that, in noting the courses and distances to natural objects along the boundary lines of such survey, he was acting in obedience to such instructions. But, whether required or not, these references having been made in the government field notes, and the surveyor, in making his resurvey, being required to follow the boundaries as fixed by the government surveyor, we think it was his duty to have made the tests of the boundary lines established by him with reference to these natural objects, in order to have enabled him to follow the original boundary lines as fixed by the government surveyor. These references to natural objects would at least have demonstrated the correctness or incorrectness of boundaries established by him with the original boundaries as fixed by the government surveyor. We have given the evidence in this case very careful consideration, in view of the importance of the questions involved. It

is very voluminous, and cannot be condensed sufficiently to insert it in an opinion, as it embraces evidence as to a great number of section and quarter section corners of a township. Therefore, we shall not attempt, in this opinion, to review it in detail, but shall only call attention to some of the more important facts disclosed by such evidence.

It is in evidence and not disputed, that in surveying and subdividing townships the government surveyor is required to, and usually does, establish a section corner by a mound, four pits and a stake; and a quarter section corner by a mound, two pits and a stake or post; the stakes or posts to be properly marked, to indicate the corner represented. A court will presume, therefore, that such government surveyor, in the absence of evidence to the contrary, performed his duty in establishing such corners. That presumption is strengthened in this case by the evidence of several witnesses, who at a very early day, and before the township was settled, saw, in different parts of the township, mounds, and, in some instances, pits and stakes, some one or more of the stakes having marks upon them. As early as 1868–69, Generius Thompson and Ole Thompson testify that, in passing over the township, they saw several of such mounds, with one or more pits, and in some cases, four pits and stakes, and were able to follow them, in making their way over the township. Several of the first settlers found mounds with one or more pits and one or more stakes in 1872, when they went into the township to locate land. It is true that not many of the mounds seemed, at that time, to have four pits, or even two pits, and but a very few stakes were to be seen. But the mounds appeared to be old mounds, "grown over with grass." Some eight or ten witnesses on the part of the plaintiffs testify to seeing such mounds. A number of the early settlers, witnesses on the part of the defendants, testify that they saw mounds, but that they did not have the two or four pits or stakes usually found at government corners. That most of the stakes should have disappeared, and that the mounds

and pits should have become indistinct and difficult to find, eight or ten years after the original government survey, and after exposure during that time to the elements, in a prairie country, would be quite natural. But these monuments, having been placed at the original corners to mark the boundaries, though somewhat indistinct and imperfect, must control in all subsequent surveys, if they can, in any posrible manner, be identified.

Section 694, Comp Laws, as we have seen, distinctly requires that, "in retracing lines or making any survey the surveyor should take care to observe and follow the boundaries and monuments as run and marked." That a number of these old monuments were in existence at the time of the Van Antwerp survey, we think, is established by a preponderance of the evidence. A number of such old corner mounds were testified to by the witnesses for the plaintiffs. It is true that the witnesses for the defendants, while admitting that they saw mounds in various parts of the township, seemed to take the view that they were not government mounds, for the reason that they did not find connected with them the required number of pits and stakes properly marked, and for the further reason that other surveyors, in locating parties in that township subsequently to 1872, had in some cases erected new mounds to mark the corners of their survey.

Mr. Thorne and Mr. Alexander, two of the surveyors referred to as having made new corner mounds, were called as witnesses by the plaintiffs, and denied making or allowing any new mounds to be made, but did in two or three instances allow parties to throw up some earth on old mounds found by them. Mr. Van Antwerp, in making his survey, seems to have entirely ignored the existence of these old mounds. He proceeded, evidently, in making his survey, upon the theory that unless the old mounds claimed to exist had the full number of pits, and were in the position called for by the courses and distances indicated in the field notes, he was not bound to follow

them. In this he was clearly mistaken, as courses and distances must yield to established monuments. It may be true that Mr. Van Antwerp is a most competent surveyor, and that he made a more accurate survey than did the government surveyor, yet, if he failed to "observe and follow the boundaries and monuments as run and marked," if they could possibly be identified, he failed to perform the duty required of him. As an explanation for this omission to follow the old mounds, he says that he did not find any government corners, or, rather, corners that had the required number of pits for government corners, or that were at the proper points as indicated by the courses and distances. But such an excuse is hardly permissible until every effort is exhausted to establish the original corners as fixed by the original survey. They may not correspond with the courses and distances as made under the accurate and careful survey of a surveyor of Mr. Van Antwerp's ability, and it may have been much easier to make an entirely new survey, but this is not what the law requires. We think it is quite clear, from the evidence in this case, that Mr. Van Antwerp paid too much attention to the courses and distances as indicated by the field notes, and too little attention to the monuments fixed by the original survey. The fact that the corners established by him are so far distant from those claimed to be the original corners indicates, at least, that his survey was made upon some different theory from that upon which the original survey was made, or that he took a different starting point.

After a careful examination of the evidence, we cannot resist the conclusion that a sufficient number of the old corners can be found and identified to enable a surveyor to ascertain the manner in which the original survey was made, and thereby enable him to fix the location of the original corners, and to account for the apparent difference in the two surveys, if, in fact, there is such a difference as is claimed. It is true that the evi-

dence on the part of both the plaintiffs and defendants in regard
to the old government mounds is somewhat vague and indefin-
ite, yet that there were mounds, and that some of them still ex-
ist, is quite apparent from the same. It is also quite apparent
from the evidence that the corners as established by Mr. Van
Antwerp are at points considerably distant from the claimed
government corners.

As before stated, the preponderance of the weight of the
evidence seems to us to be, clearly, with the plaintiffs,—that
Mr. Van Antwerp's survey is not "in accordance with the gov-
ernment survey," and that the boundaries, as established by
him, are not the boundaries and corners originally established
by the government surveyor. We are of the opinion that such
a survey cannot be sustained until at least further efforts have
been made to identify and fix the original corners as established
by the government surveyors. We do not question the ability
of Mr. Van Antwerp, or that he conscientiously endeavored to
perform his whole duty; but, we think, as before stated, he re-
lied too much on mere courses and distances as indicated by the
government field notes, and made too little effort to ascertain
and establish the original corners as they were established by
the government surveyor. To illustrate, he says: "I noted
the quarter corner between sections 4 and 5, that was 16 rods
north and 27 rods east [from the corner established by him,]
and there was a mound there with a foot and a half base, and
six inches high, with three pits. All that I could learn about
the mound was that they said they found it there, but knew
nothing more about it. It did not have the appearance of a
government mound, and is not in the place called for in the
field notes, according to the government survey." The fact
that there was a mound there, with three pits, found there by
the old settlers, though they might not have · been able to state
that it was made under the direction of the government sur-
veyor, was some evidence, at least, that it was so made. The
further fact that no corner within the interior of the township,

as established by Mr. Van Antwerp, was so established at any point where any mound was found or claimed to exist, except one, throws at least some doubt upon the correctness of his survey, as following the original boun daries and monuments as established by the government surveyor. He was asked: "Did you locate on a single corner that that was pointed out to you as an old corner? A. I did not, except one." We thus see, of the 72 corners established by him, only one was at a point where there was a mound, or any indication that a corner had been established there by the government surveyor. He says: "In going through, I found what some people said were mounds. I think I noted all that I found." How many he found or noted does not clearly appear; but, from the evidence in the case on the part of the plaintiffs, it would seem that quite a large number were still existing, as the plaintiffs' counsel contended in their brief that some 20 or more were conclusively established as old government mounds. Again, Mr. Van Antwerp says he did not note any natural objects referred to and noted in the field notes of the government survey. He was asked: "Q. You have not noted here in your field notes any reference to any natural objects, have you? A. I have not. Q. What is the reason of that? A. Because natural objects are not considered anything to do with the established corners." His attention was then called to a number of such natural objects,—sloughs, bottoms, hills, etc.,—to which he gave similar answers.

While it may be true, as contended by counsel for respondents, that mere incidental calls in passing along a boundary line will not control courses and distances, like locative calls, yet when a surveyor is seeking to establish an old corner, obliterated or indistinct, it is the duty of the surveyor to observe these incidental calls, in order to enable him to locate the locative calls. Of course, when the surveyor, in his resurvey, has a fixed starting point, from which the original survey was made, and the corner or monument sought to be re-established is lost, the courses and distances would control mere incidental

calls, not intended to be locative calls. But we do not understand, from the evidence in this case, that Mr. Van Antwerp did in fact take the same point as a starting point from which the original government survey was made.

In regard to the manner of commencing the survey, Mr. Van Antwerp says: "I have had experience in resurveying lines for the purpose of establishing lines in townships according to the government survey. In subdividing a township, we start at the corner between 35 and 36 in the south boundary. That is the instructions. By 'subdividing' is meant cutting the township up after the township lines are run  *  *  *  If a surveyor commences at the south line, and surveyed the township, and did not get the first section corner correct, it would change the corners all through the township—all through that tier. They run up by tiers. I made a survey of Burk township in 1887. I commenced the survey at the southeast corner of the township, from the town line, as shown to me. The parties stated that was the corner of the township. I found there a stone set in the mound at that time. I made notes that I took at the time to refresh my memory. Somebody told me that was the southeast corner of this township. I examined the corner, and found a mound with a stone set in it, and a sign of three pits, north, east and west of the stone. The mound was probably three feet across, and eight or ten inches high. One track of the wagon road ran right across the location of the south pit. As far as I could ascertain by inquiry at that time, this was the acknowledged corner of that township, as being a government corner. The field notes of the government survey of Burke township showed that to be the corner where the government corner should be. My survey of those lines showed this was exactly the same place for the corner. I tested it by other government mounds on the line in different parts of the township—on the west, on the south, and on the east. In making this survey, I made inquiries of everybody who claimed to know anything about the mounds or corners on the line of the

survey." He further states that he did not find any one who was present when the original survey was made, and that he was not able to find the first three corners on the south township line. We thus see that Mr. Van Antwerp did not have the original corner between sections 35 and 36, as actually located on the ground to start from. He therefore found it necessary to make the southeast corner of the township his starting point, and then to fix by courses and distances the initial point of the government survey. He further says that he paid no attention to the needle in his survey, but used a solar compass entirely. It will be seen, therefore, that Mr. Van Antwerp really assumed a point from which to make his survey different from that adopted by the government surveyor. We are of the opinion, therefore, that it was clearly Mr. Van Antwerp's duty to have tested his lines by all the incidental calls referred to in the government field notes, and the fact that he found no old mounds at the corners established by him was pretty conclusive evidence that he was not following the boundaries and monuments "as run and marked by the original survey." It will be seen that the controversy is not as to mounds or monuments found at different points indicating corners, but as to the establishment of corners by courses and distances at points where there are no indications that mounds or monuments had formerly existed, when in the vicinity are mounds or monuments which are claimed to be the original government mounds as established by the government surveyor. Had Mr. Van Antwerp's survey established the corners at any considerable number of the old mounds, or had it been clearly shown that none of the old mounds or monuments existed, we might not feel inclined to disturb the findings and judgment of the court; but when, as in the case at bar, the evidence shows that mounds were originally established, and that mounds claimed to be such were found by the first settlers when the country was settled, still exist, and are claimed to be the old original government mounds, and the resurvey establishes corners at points

where there are no indications of government mounds in all instances, except one, we think it is clearly our duty to reverse the judgment, and direct a new trial, and it is so ordered.

KELLAM, J. *(Concurring specially.)* I have some doubt about appellants' specification of the particulars in which the evidence is insufficient to support the findings of the court being such as to justify the examination of that question by this court; but, that being decided affirmatively by a majority of the court, I concur in the opinion upon the merits.