## MILLS v. LEHMANN.

Where none of the testimony offered by defendant appears in the abstract, and his only exceptions are to the instructions, every presumption is in favor of their correctness, unless under no possible theory could they be correct.

The government survey, according to which patents of public lands are made, establishes boundaries thereto which, if they can be found, cannot be changed or varied by a township resurvey.

(Opinion filed, December 11, 1911.)

Appeal from Circuit Court, Aurora County. Hon. FRANK B. SMITH, Judge.

Action by Martin M. Mills against Gottlieb A. Lehmann. Judgment for plaintiff, and defendant appeals. Affirmed.

C. H. Dillon, for appellant. Bakewell & Bakewell and Bailey & Voorhees, for respondent.

McCOY, J. This action involves a dispute over boundary lines. Plaintiff is the owner of the S. E. ¼ of section 13, and defendant is the owner of the N. ½ of section 24, in township 101 north of range 64 west, situated in Aurora county. The dispute arises over the true location of the section line between said sections 13 and 24. Plaintiff claims to own according to United States government survey. Defendant claims to own according to a survey designated as the Van Antwerp survey. The Van Antwerp survey changes or removes to the north the section line from where plaintiff claims it should be according to the government survey, so that defendant would obtain about eight acres of the land claimed to be owned by plaintiff. While the pleadings are not set out in full in the abstract, there is sufficient to show the issue or controversy as stated. Plaintiff offered evidence tending to show that there was at the southeast, northeast, and southwest corners of his land original government mounds, and that there are original government mounds at the northeast corner, northwest corner, and southwest corner of section 13, and government quarter

corners between 13 and 14, and 12 and 13.   Defendant claimed
that none of the corners, as claimed by plaintiff, were original
government corners, and claimed that the same should be relocated
by running a straight line from the northeast corner of the town-
ship to the southeast corner of the township, apportioning the dis-
tances; and by running the line from the northwest corner of
the township to the southwest corner of the township, and appor-
tioning the distances on that line; and by running a line north and
south across the township between sections 13 and 14, and appor-
tioning the distances; and by running a line east and west across
the township between sections 13 and 24, and another line across
the township east and west between sections 12 and 13, and ap-
portioning the distances on these lines.   The defendant also
claimed that there were no original government corners on any of
these lines, excepting the corners of the township, and claims that
all other corners outside these lines in the township were im-
material.   The cause was tried to a jury and a general verdict ren-
dered in favor of plaintiff.

[1] None of the testimony, if any was offered by defendant,
appears in the abstract.   The only exceptions taken were to the
charge of the court to the jury.   Under the record, every pre-
sumption and intendment is in favor of the correctness of the in-
structions, unless, under no possible theory, could the same be cor-
rect.   The instruction as given by the court is quite lengthy, and
it would serve no useful purpose to reproduce the same in full.
Among others, the court gave the following instruction:

"Now, when the government has made these surveys and sub-
divided it into sections and quarter sections, and surveyors are re-
quired to make a plat of it, and they are required at the time
they make these surveys to make what they call field notes.   These
field notes are just simply a little notation of the direction in
which they go.   They start out from a particular point, and these
field notes are a short notation of the direction they go, the dis-
tances that they go, and the landmarks, the mounds, or pits, or
methods, that they use in designating the corners of these various
sections and quarter sections.   They are also expected to note the

topography of the country around—that is, whether there are any
lake beds and hills, etc.—and refer to this in connection with
these corners that they may establish.  I say they make a plat of
that, and together with these field notes ,explaining that plat, it is
filed in the General Land Office in Washington.  When the gov-
ernment of the United States sells or gives to an individual a piece
of land, or gives him a patent to a piece of land, it is given or sold
to him according to this plat that is there on file.  You will find
that all patents from the government read—that is to a quarter
section of land—will call for 160 acres, but it always says, 'ac-
cording to the platted survey thereof on file in the Land Office.'
Now, that is the way the government hands out its land to the
people.  Always according to that survey; and, while it is sup-
posed that every quarter section of land will have just 160 acres
in it, it is a matter of common knowledge that very often it does
not.  It may be more, or it may be less; and whether it is more
or whether it is less is always ignored by this plat and the survey
that is filed in the Land Office.  And if that boundary, if the
boundary to any quarter section of land, as indicated by that plat
and by the survey and field notes that are filed there, can be ascer-
tained, it will govern the amount of land which that man is en-
titled to under his patent, whether it is more than 160 acres or
less, or just 160 acres, and no matter what the particular location
of it may be, whether it may be exactly rectangular or exactly on
a meridian, or exactly on the line at right angles with a meridian,
or not.  So I say to you, if it can be ascertained, if the boundary
lines of a piece of land, as designated by this plat and by the gov-
ernment survey, can be ascertained, that must always and for all
time govern, and no man or no state has any right to change it
or alter it in any manner.  So, in the first place, when a man gets
a patent to a piece of land, he is entitled to whatever is within
the bounds of the plat corresponding to his description that is on
file in Washington, and so long as he can establish that he is en-
titled to it, no matter how much it may take from another man,
or how little the other man may have.  The difficulty arises in the
fact that very often the landmarks—and we will call them the
corner marks—become, out in this country, obliterated.  The in-

structions of the Land Office require that the surveyor, in sub-dividing these townships, shall, at every section corner and every quarter section corner, leave certain marks, which are generally a mound and a stake. Sometimes they say they shall put in a piece of charcoal, which is supposed to exist for a long time in the ground, or a charred stake, which lasts for a long time, or sometimes a stone. They describe what the mound shall be, and there is no doubt as to that, for all the witnesses seem to agree in regard to what the mounds and pits should be out in this country. Now, the surveyors, as I say, are required to make those corner marks when they make this survey. They ought to conform to the instructions of the Land Department in making them. If they did, it is probable that the landmarks would last longer than they quite often do; but it is a matter of common knowledge that these pits are not always made just as perfect as is expected by the Land Department; and it is also a matter of common knowledge that they become destroyed in various and different ways, so that after a long length of time it may be very difficult for a person to find many or very many of the original mounds or pits that were put there by the surveyors. Consequently these questions and difficulties in boundary lines arise.

"Now, in this case, it seems that the people in this township have thought, or some of them at least, that the original lines as run by the original surveyors were indistinct and uncertain, and that they have gotten into some dispute about it, and there has been recently a survey, in the last two or three years, down in that country, in order to settle the question; and, while it is a matter that the whole township is interested in, the jury is called upon to only decide the question as between the plaintiff and the defendant. The plaintiff, of course, has a patent in this case which calls for the southeast quarter in section 13—160 acres according to the government plat. The defendant has a patent, or at least succeeds to that patent, which calls for the northeast quarter of section 24, and the northwest quarter of section 24—each 160 acres according to the government plat. The dispute arises between these fellows as to where the original dividing line is between the southeast

quarter of section 13 and the northwest quarter of section 24, and you are called upon to determine that question, if you can. When the township was subdivided, I think it practically undisputed that mounds were made along these section and quarter section lines of some kind. Landmarks of some kind were left there by the surveyors. Mr. Mills claims that the original mounds were at certain locations, and that if his line extends to those mounds that he is ·entitled to the piece of land which is in dispute, which I think is about seven, eight, or nine acres, somewhere in there; anyway, the strip of land between them. Now, if those mounds, or the places where they were, can be established with a reasonable certainty, that will be his line. Those mounds must govern. It don't make any difference whether they ,were right or wrong; they are the marks that must control the south boundary of Mr. Mills' land, if we can find them, if they can be located. I might go back a little, and say to you that when the original surveyors make a survey that, no matter how incorrect the survey is, no matter how crooked the line may be, no matter how far off from the proper place in the field notes the landmarks may be placed, those must control, if we can find them. So if a surveyor originally subdividing this township, or running this outside line, should have run a zigzag line through the township in either direction, and that line can be located, it must absolutely control; and no surveyor and no law has any business or any right to change it. You have a plat before you there that shows zigzag lines—not exactly zigzag lines, but a crooked line—a red line running, some of them north and south, and some of them east and west, through this township. It does not look right to you or to me; but, nevertheless, the law is, if that was the original line run by the surveyors of the United States, it must control, and it does not matter whether it gives him 160, 150, or 200 acres of land; it must control. If the original landmarks have been lost and obliterated, and the places where they were cannot be ascertained with reasonable certainty, then there are certain rules and certain laws prescribed by the government of the United States for the guidance of surveyors, by which surveyors may go out and as near as possible relocate the old corners. Now, a surveyor who is

called out to resurvey a township or a part of 'it, his purpose is not to establish new corners. His business and object is to find the old corners, if he can. If they have been totally lost and obliterated, and he cannot find them by his eyesight, or cannot locate them by inquiry from people who live there, to a reasonable certainty, then he must take these field notes and the instructions of the Land Department, and the general knowledge and experience that a surveyor has, and relocate these old corners as near as he can. It is none of his business to make new corners. His business and object is to find the old ones as near as he possibly can. That is the idea of these resurveys."

[2] This instruction embodies a very clear statement of the law as we understand the same to be. This court recently said, in the case of Hoekman v. Iowa Civil Township, "that in making a resurvey of a township the surveyor had no right or authority to ignore or vary the original survey as made by the United States. That the only authority conferred, under sections 1151 to 1159, inclusive, Rev. Pol. Code, is to mark the corners as located and established by the United States survey. When a government mound or mark has been obliterated or lost, in the relocation thereof, the question is, not where such government mound ought to be, if the township had been correctly surveyed, but where it really and in fact was, according to the survey as made by the United States." In the case of Wentzel v. Claussen, 26 S. D. 89, 127 N. W. 621, a very similar case, this court held that a resurvey could not be considered which ignored and varied from the existing government mounds and calls as shown by the United States survey. This view seems to be established by an abundance of authority. Randall v. Burk Township, 4 S. D. 337, 57 N. W. 4; Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646; Tyler v. Haggart, 19 S. D. 167, 102 N. W. 682; Climer v. Wallace, 28 Mo. 556, 75 Am. Dec. 135.

Finding no error in the record, the judgment appealed from is affirmed.