[Civ. No. 2844.  First Appellate District, Division One.—September 5, 1919.]

## RODERICK McKENZIE, Respondent, v. A. NICHELINI et al., Appellants.

[1] Public Lands—Re-establishment of Government Corners—Use of Proportional Method—Not Controlling on State Courts.— The proportional method in re-establishing government corners as laid down by the surveyor-general of the United States is for the guidance of United States deputy surveyors in running lines in which the government is interested, and cannot control a state court in its choice of means for establishing the point where the government surveyor originally placed a section or quarter-section corner, when that question properly arises within its jurisdiction.

[2] Id.—Case at Bar—Location of Corners Without Use of Proportional Method.—In this action involving the location of the dividing line between the north and south halves of a certain quarter-section of land, the trial court was justified in locating the quarter-section corners in question as it did without resort to the proportional method.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Albert A. Molfino, Percy S. King, Charles L. McEnerney and Leo J. McEnerney for Appellants.

John T. York for Respondent.

RICHARDS, J.—The plaintiff, being the owner of the south half of the northwest quarter and the north half of the southwest quarter of section 24, township 8 north, range 4 west, Mount Diablo base and meridian, brought an action in ejectment against the defendants, who claimed ownership of the south half of the last named quarter-section but who had entered into possession of land by virtue of such claim which, according to the plaintiff, constituted part of the north half of said southwest quarter.

The court, after a lengthy trial, in which much evidence was taken of surveyors and others as to monuments, witness trees, courses, distances and topography, found in favor of

the plaintiff, and gave judgment accordingly. The defendants appeal, their main contention being that the finding of the court as to the location of the plaintiff's land upon which its judgment is based is wholly unsupported by the evidence and is contrary thereto.

The deciding factor in the case, as admitted by the appellants, is the location of the line dividing the north and south halves of the southwest quarter of section 24 above referred to. According to the contention of the appellants, the true method for locating this line is first to find the legal center of the section—a point, as they remark, which is not set by the government surveyor, but which is found by running a straight line from the quarter-section corner on the north boundary of the section to the quarter-section corner on the south line thereof, and then by intersecting this line by one drawn from the quarter-section corner on the west side of the section to the opposite quarter-section corner on the east, the point of intersection of these two lines being the legal center of the section. Having thus obtained the interior boundaries of the four quarters of the section the north and south halves of the southwest quarter will be found by similarly intersecting that quarter-section by an east and west line equidistant from its north and south boundaries, to do which it is, of course, necessary to know in addition to the points already obtained the quarter corner on the south boundary of the section (identical with the southeast corner of the southwest quarter) and the southwest corner of the section (identical with the same corner of the quarter-section). It is the appellants' contention that the evidence offered by the plaintiff shows that the lines were not run in this manner, from which they argue that the court's finding as to the location of the line in dispute is not supported by the evidence.

It will be observed, however, that given a section of land 80 chains square the southwest quarter thereof will be bounded by four straight lines, each 40 chains in length, one running from the southwest corner to the west quarter corner of the section; a second running from the said southwest corner to the south quarter corner; a third running from the west quarter corner easterly and parallel to the last-mentioned line, and the fourth running from the quarter corner on the south northerly and paralleling the first-mentioned line. The

north and south halves of this quarter-section will be found by running a line from a point 20 chains north of the southwest corner to a point 20 chains north of the southeast corner thereof. And since the dispute between the parties to this appeal is only as to the location of the line between the north and south halves of the quarter-section involved in its relation to north and south the degree of extension easterly or westerly of this line becomes immaterial, for no right of appellants to land to the east or west of this quarter-section is in question, and the judgment of the court has not ejected them from any land so located.

Turning now to the evidence upon which the court based its finding as to the relative location of the north and south halves of this quarter-section, there is testimony in the record that the entire section is approximately 80 chains from north to south; that the plaintiff's surveyor for the purpose of locating the plaintiff's land started at the southwest corner of the section, which corner he had known as the established government corner for many years; from that point he ran north 20 chains and there located the westerly end of the line dividing said southwest quarter into north and south halves; from there he ran 40 chains north, and there located the westerly end of the line dividing the northwest quarter of the section into north and south halves; to ascertain the precise direction in which he should run the north and south boundaries of plaintiff's land (having ascertained that there were no established government corners on the east side of the section now to be found) he measured the whole township line from south to north between townships 3 and 4, the eastern boundary of section 24 being part of this line, and finding it seven chains short of the correct distance, he prorated the deficiency between the six sections on the east side of the township, which gave him as the direction in which the north and south boundaries of section 24 should be run a course north 83 degrees east. He accordingly ran two such lines 40 chains in length for the north and south boundaries of plaintiff's land, and joined the eastern extremities of these lines by a line parallel to the western boundary already described. This direction of north 83 degrees east, however, was not accepted by the court as correctly locating the plaintiff's land. The government field-notes of certain lines of the section in question were in evidence, among them the south boundary

thereof, which was a line run due east from the southwest corner of the section; and from testimony as to the topography of the land traversed by a line run east from said corner the court concluded that such testimony was sufficient to establish as the true direction of said south boundary a line due east as given in said field-notes, and in its findings adopted this direction for the north and south boundaries of plaintiff's land, the latter of which is the dividing line between plaintiff and defendants. It further appears that the northwest corner of this section as established by the government could not be found; but that a line drawn from the corner common to sections 14, 15, 22 and 23 (located one mile west of section 24) to a point on the east line of the township between said section 24 and section 19 in the adjoining township, located with reference to its relation to a known government corner further east, would pass through or very close to a point 80 chains north of the southwest corner of section 24, the distance called for by the field-notes for the northwest corner of the section. If we regard the north boundary of the section as being coincident with the eastern half of this line (and it is the only testimony in the record with reference to its location) a line drawn from the quarter corner on the north boundary of the section to the corresponding corner on the south boundary would be somewhat longer than 80 chains. If this excess were divided between the four equal parts of this line it would place the eastern extremity of the line dividing the north and south halves of the section a trifle to the north of where the court found it to be; but the error is so small that we think it is a case for the application of the legal maxim "The law disregards trifles" (Civ. Code, sec. 3533), and not of sufficient magnitude to warrant a reversal of the case.

The appellants' contention that the finding of the trial court as to the location of plaintiff's land is not supported by the evidence is also based upon the assertion that the southeast, northeast, and southwest corners, as also of all the quarter corners of section 24, are lost corners, which should be re-established by the proportional method in order to locate the line in dispute in this action. It is not necessary to agree with the appellants that the re-establishment of all of these lines is necessary in order to correctly locate the line in dispute, but their contention may be considered with refer-

ence to those corners which the trial court used in reaching its conclusion and which it found by methods other than that urged by appellants, viz., the quarter corners on the west and south sides of the section, and the section's legal center point.

[1] It may first be said that we think the appellants' contention as to the duty of the trial court to resort to the proportional method in re-establishing government corners is entirely too broad. The rule in this respect as laid down by the surveyor-general of the United States is for the guidance of United States deputy surveyors in running lines in which the government is interested. It cannot control a state court in its choice of means for establishing a fact, to wit, the point where the government surveyor originally placed a section or quarter-section corner, when that question properly arises within its jurisdiction. But this rule of the general land office is itself but a statement in detail, and perhaps an extension of a rule long followed by the courts of the country generally. In *Weaver* v. *Howatt,* 161 Cal. 77, 84, [118 Pac. 519, 522], our own supreme court has indicated the extent to which it will follow the rule. It is there said: "It is not the province of the court to determine where the corner should have been fixed. This is not an action to vacate the government survey. It must be assumed that the line was measured and the monuments set. Their positions as set fix the rights of the parties regardless of the inaccuracy of the measurements and the errors in distance found in the field-notes. The trial court must ascertain as near as may be where this monument was set by the government surveyor. If the exact spot cannot be found it must if possible decide from the data appearing in evidence its approximate position, and the proportional method is to be used only when no other reasonable method is possible, and it must be so used that it does not contradict or conflict with the official data that are not impeached, and which when not impeached confine the position within certain limits. The application of the proportional method must in that case be also confined to the same limits."

[2] In the case at bar the trial court was apparently satisfied that the evidence in the case afforded the means of locating the quarter corners on the west and south sides of the section without resorting to the proportional method; and a comparison of the government field-notes with the testimony

of witnesses relative to the topography of the country trav-ersed by the government surveyor in reaching and placing these points does not enable us to say that it was not justified in locating these corners as it did without resorting to the method claimed by the appellants to be compulsory under the circumstances here presented.

The appellants make the further point that the court failed to find upon a material issue, namely, the claim by the plaintiff, denied by the defendants, of ownership of land in the south half of the southwest quarter of the same section; but as the court granted the plaintiff no relief under this claim, and the point is made by the appellants for the first time in their closing brief filed after the oral argument of the case, we do not feel called upon to give it consideration.

For the reasons stated the judgment is affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 3, 1919.

All the Justices concurred.