# THOMSEN *v.* KEIL

## No. 2613

June 4, 1924.                    226 Pac. 309.

1. BOUNDARIES—WHEN CORNER REGARDED AS "LOST CORNER."

A corner should not be regarded as lost until all means of fixing its original location have been exhausted; a "lost corner" being a point of a survey the position of which cannot be determined beyond reasonable doubt, either from original traces or from other reliable evidence relating to the position of the original monument, and the restoration of which on the earth's surface can be accomplished only by means of a suitable survey with reference to interdependent existent corners.

2. BOUNDARIES—ROAD IN RAVINE HELD AN ACCESSORY, OR CALL FROM WHICH ORIGINAL LOCATION OF QUARTER CORNER COULD BE ESTABLISHED.

Where a road called for in field notes was in a ravine, it was to be considered as an accessory, or call from which the original location of the quarter corner could be established, especially where the point at which a marked stone was found and designated in the field notes as the location of the quarter corner was only about 70 feet from the road, and in clear view thereof.

3. EVIDENCE—EFFORT OF PARTY TO CONCEAL MARKED STONE HELD CIRCUMSTANCE AGAINST HIM.

The effort of plaintiff to conceal a marked stone found near the claimed location of a boundary corner *held* a circumstance justifying the court in looking with suspicion upon his case.

4. BOUNDARIES — COURSE AND DISTANCE GENERALLY YIELD TO NATURAL AND ASCERTAINED OBJECTS.

Generally course and distance yield to natural and ascertained objects, but where they are wanting, and the course and distance cannot be reconciled, the one is not required to be preferred to the other.

5. APPEAL AND ERROR—PORTION OF BRIEF CONSTITUTING UNJUSTIFIED ATTACK ON ADVERSARY'S WITNESS STRICKEN.

Where a portion of appellant's brief was an unjustifiable, inexcusable attack upon one of adversary's witnesses, a motion duly made to strike that portion of the brief on such grounds will be granted.

See (1, 2, 4) 9 C. J. sec. 15, p. 162, n. 85; sec. 16, p. 163, n. 91; sec. 127, p. 213, n. 33; (3) 22 C. J. sec. 53, p. 112, n. 55; (5) 3 C. J. sec. 1595, p. 1433, n. 23.

APPEAL from Sixth Judicial District Court, Humboldt County; *James A. Callahan,* Judge.

Action by T. A. Thomsen against C. F. Keil, who interposed a cross-complaint. From a judgment for

defendant, and from an order denying a motion for new trial, plaintiff appeals. **Affirmed.** (SANDERS, J., dissenting.)

*Warren & Dignan,* for Appellant:

Every call for natural object on random line of original survey is admittedly incorrect, yet defendant seeks to support judgment on obliterated road whose position is nowhere disclosed. His surveyor refused to be governed by rules of Department of Interior and attempted to fix true corner by single proportionate measurement, though regulations require double measurements. His survey is anchored to nothing. 1919 Manual, secs. 365, 370; Clark's Surveying, secs. 343, 379.

Calls for natural objects or marked lines and corners prevail over courses and distances. If there is mistake in calls and not in courses and distances, rule is reverse. Christenson v. Simmons, 82 Pac. 805; Goss v. Golinsky, 106 Pac. 604.

Defendant ignored apparent mistake in call, court refused to make finding upon it. Judgment is clearly against evidence. Lost corner must be reestablished according to rules. King v. Carmichael, 87 Pac. 1120.

*Thos. E. Powell,* for Respondent:

Road still exists above and below canyon and could be only in bottom of steep canyon where line crossed it. Miller v. Cuehlo, 90 Cal. 549, does not hold that road is not legal evidence, but merely that it is not conclusive. Plaintiff's surveyor attempted, not to reestablish N.W. or N.E. corner of section 33, but to investigate as to original corners or monuments in field notes. N¼ corner of section 33 was found to be obliterated, not lost. Its relocation was unnecessary and surveyor never claimed to have relocated it. Original survey is presumed correct. United States surveyor's corners are conclusive, right or wrong, as to boundary lines. Clark's Surveying, sections 13, 385, 388, 389, 395; Fredertzie v. Boeker, 92 S. W. 227. Courses and distances yield to fixed monuments. Blake v. Doherty,

5 L. Ed. 109; Higuera v. U. S. 18 L. Ed. 469; Clark, sec. 415. Obliterated corner may be established by witness who saw it. Clark, secs. 342, 397, 398, 401, 415.

## OPINION

By the Court, COLEMAN, J.:

This suit is in the nature of an action to quiet title. It is in reality an action to establish a boundary. Plaintiff sought to have his title quieted to the northwest quarter of the northeast quarter of section 33, township 36 north, range 35 east, Mount Diablo base and meridian, Humboldt County, Nevada. The defendant filed an answer disclaiming any title or interest in said property, but for a cross-complaint sought to have his title quieted to the east half of the northwest quarter of section 33, township 36 north, range 35 east, Mount Diablo base and meridian, Humboldt County, Nevada. From a judgment in favor of the defendant, and an order denying a motion for a new trial, the plaintiff has appealed.

A determination of the issues between the parties depends entirely upon the correct location of the north quarter-section corner of section 33, since the plaintiff is admitted to be the owner of the land to the east of the true line between the tracts claimed by the parties, and the defendant of the tract to the west of this line.

The township in which the section mentioned is located was surveyed many years ago by the United States Government. In an effort to sustain his contention as to the correct position of the quarter corner mentioned, the respective parties employed a surveyor to locate the same. In doing so they undertook to locate the north line of section 33. While both found the original monument of the southwest corner of the section, they disagreed as to the original location of the northwest and the northeast corners thereof.

Beginning at the northwest corner of the section, the original field notes, so far as material, read:

"East, on a random line between sections 28 and 33

variation 17° 45 east.   Over mountainous ground.
11.00 cross ravine course S. 21.00 cross ravine course S.
39.00 cross road course S. E.   40.00 set temporary
¼ sec. cor. 55.00 cross ravine course S. E. 80.33 inter-
sect N. & S. line 15 lks. N. of the cor. to secs. 27, 28,
33 & 34, thence I run N. 89° 54' W. on a true line bet.
secs. 28 & 33 with same var.   40.16 Deposit a marked
stone 12 ins. in the ground for ¼ sec. cor. dig pits
18x18x12 ins. E. & W. of cor. 5½ ft. dist. and raise a
mound of earth 1½ ft. high, 3½ ft. base over it.   In
E. pit drove a stake 2 ft. long 2 ins. square, 12 ins. in
ground marked ¼ S. on N. face.   80.33 the cor. to
secs. 28, 29, 32 & 33, land mountainous, soil 3rd rate,
sagebrush."

The plaintiff contending that the north quarter
corner of section 33 is a "lost" corner his surveyor
established it at a point which, if correct, would neces-
sitate a reversal of the judgment.   The surveyor of
the defendant took the view that the north quarter
corner is not a "lost" corner, and established it at the
point which the trial court adopted as the original
north quarter corner.

1.   A "lost" corner is defined as follows:

"A lost corner is a point of a survey whose position
cannot be determined, beyond reasonable doubt, either
from original traces or from other reliable evidence
relating to the position of the original monument, and
whose restoration on the earth's surface can be accom-
plished only by means of a suitable surveying process
with reference to interdependent existent corners."
Clark on Surveying and Boundaries, sec. 376, quoting
from rules of the Department of Interior.

In the same section the author says:

"A corner should not be regarded as lost until all
means of fixing its original location have been exhausted.
It is much more satisfactory to so locate the corner
than regard it as "lost" and locate by proportionate
measurement."

At section 329 the author says:

"The surveyor should not treat a corner as lost until

he has exhausted all means of fixing its location aside from the determination thereof, by measurement thereof to other corners."

Counsel for appellant says that the rules of the Department of Interior relative to the establishment of corners as originally established pursuant to the government survey must control. This would certainly be true if the quarter corner in question were upon the surveyed public domain; but, since it is upon land privately owned, and for which patent has been issued, we are not prepared to admit the contention, but, since the case seems to have been tried upon the theory urged, we will in disposing of it be guided by the rule invoked.

The trial court no doubt kept in mind the admonitions above quoted against considering a corner as lost. Indeed, we think it would have violated the rule invoked by appellant had it concluded that the corner in question is "lost." In the light of the rule quoted we must determine if the trial court could, beyond reasonable doubt, either from original traces or from other reliable evidence relating to the original position of the corner, determine its position.

The evidence on the part of the plaintiff is to the effect that he measured the distance between the points which he contends represent the northwest and the northeast corners of the section and established the north quarter corner at a point equidistant between the two. As we have pointed out, the surveyor of the defendant disagreed as to the correct location of these corners as maintained by the surveyor of the plaintiff. Which view the trial court accepted does not appear. Nor indeed is it material, since it rejected in toto the theory of the plaintiff as to its being a lost corner. Since, as we have said, the position of the north boundary line of the section is not seriously disputed, we need not consider in detail the evidence of the surveyor of the defendant. It will be observed that the original field notes of the survey of this north boundary line of section 33, as quoted, calls for a "road course

S. E." at a point 39 chains distant from the northwest
corner of the section, and at 40 chains "set temporary
¼ sec. cor." The undisputed testimony shows that
there was a road crossing this section in the direction
mentioned in the field notes; that this road is in a
deep ravine at the point where the ravine crosses the
north section line in question; that a road could not
have been constructed on the west side of that ravine
because of the topography of the country, and there
is evidence that there never was a road on the east
side of it, and that one could not have been built along
its east side except at great cost; that the bottom of
the ravine was a natural roadbed; that the road in'
this ravine had been used for many years; that a few
years ago there was a cloudburst which washed large
quantities of rock and gravel into the road at the
point mentioned, but the point at which the road
passed up the ravine where thus covered over was
located by oral evidence. Witnesses also testified that
at a point about 70 feet east of this road, on the side
of the hill, and in clear view of the road, a rock about
20 inches long was discovered with the figure "4" cut
upon it with a line over the figure. The defendant
testified that he had seen this rock at this point over
a period of several years. A remarkable coincidence
in this connection is the fact that the surveying crew
of the plaintiff took this rock from the place it had
been for several years, carried it to town, and strenu-
ously resisted all efforts on the part of the defendant
to have it produced in court.

Clark on Surveying and Boundaries, at section 373,
says:

"Where a monument is obliterated, the accessories
furnish the highest evidence of the location of the
original monument, and therefore such accessories are
of prime importance in relocating such obliterated
monument. The term accessories includes all witness
trees, line trees, mounds, pits, streams, bodies of water,
ledges, rocks, or other natural features to which the
distance from the corner or monument are known.

These natural features furnish unmistakable evidence of the location of the monument, the nearer to the required point, the stronger the evidence."

2. In the instant case the road called for in the field notes was in a ravine—the only place, according to the evidence, it could be—and the place where it is shown to have been. This certainly must be considered as an accessory—a call from which the point of the original location of the quarter corner could be established. Particularly is this true when it is remembered that the point at which the marked stone was found and that designated in the field notes as the location of this quarter corner is only about 70 feet from this road and in clear view thereof.

3. No doubt, too, the court attached considerable significance to the rock to which we have alluded. It is true that the rock was not found in a mound or in such a position as to indicate that it had been placed at the point found, but, in view of all of the testimony, particularly that as to cloudbursts in that locality, the court was justified in concluding that it had been carried a short distance from the point at which it was originally placed. The effort on the part of the plaintiff to conceal this stone is a circumstance justifying the court in looking with suspicion upon his case.

We think, in view of all of the evidence, the court was justified in establishing the quarter corner with reference to the call for the road in the field notes where it did.

4. The rule which should control in this situation is that stated in a unanimous opinion by the Supreme Court of the United States, speaking through Mr. Justice Story, wherein he said: "It may be laid down as an universal rule, that course and distance yield to natural and ascertained objects. But where these are wanting, and the course and distance cannot be reconciled, there is no universal rule that obliges us to prefer the one or the other. Cases may exist, in which the one or the other may be preferred, upon a minute examination of all the circumstances." Preston's Heirs v. Bowmar,

6 Wheat. 581, 5 L. Ed. 336. The road in the instant case was certainly an "ascertained object," an accessory in the sense used in the foregoing opinion.

In United States v. Redondo Dev. Co., 254 Fed. 656, 166 C. C. A. 154, the court, in disposing of a case involving a question of disputed boundary, said:

"The general order of precedence of proofs for determining disputed boundaries gathered from the multitude of adjudicated cases is: First, natural monuments or objects, like mountains, lakes, and streams; second, artificial marks, stakes, or other objects, made or placed by the hand of man, as in this case; third, courses and distances in documents or writings prescribing or reporting the establishment of the lines; lastly, recitals of quantity. But the rule is not imperative. It proceeds upon considerations of the comparative certainty or fallibility of the evidences of the intention of the qualified authority, public or private, by which the boundary was prescribed. The rule is one of construction, and, like all such rules it is not conclusive or final, but is adaptable to circumstances."

See, also, Security L. & Ex. Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662; Clark, Surveying and Boundaries, sec. 415.

We can see nothing in the case of Jones v. Andrews, 72 Tex. 5, 9 S. W. 170, or in the case of Hanson v. Township of Red Rock, 4 S. D. 365, 57 N. W. 11, in conflict with the rule stated. In fact, they both accept the rule, but in the particular case the court is governed by the idea expressed in United States v. Redondo Dev. Co., supra, to the effect that the rule is one of construction, and, like all such rules, is not conclusive or final, but is adaptable to circumstances.

5. A motion was made in apt time and argued and submitted at the time this case was argued on the merits, to strike a certain portion of appellant's opening brief. The matter alluded to is an attack upon one of the witnesses who testified in behalf of the defendant, and is uncalled for, without justification, inexcusable, and a gross abuse of the privilege enjoyed by an

attorney. It is ordered that the motion be sustained, and that the matter complained of be stricken from appellant's opening brief.

It is further ordered that the judgment be, and the same is hereby, affirmed.

DUCKER, C. J.: I concur.

SANDERS, J.: I dissent.

ON MOTION TO STRIKE AND PETITION FOR REHEARING

February 9, 1925.                                232 Pac. 1080.

1. APPEAL AND ERROR—FRIVOLOUS REPLY TO PETITION FOR REHEARING STRICKEN.

Respondent's reply to appellant's petition for rehearing alleging that petition contained scurrilous matter, and characterizing its contents as "balderdash," etc., will be stricken as frivolous.

See 4 C. J. 2518, p. 639, n. 70.

On motion to strike reply to petition for rehearing and on petition for rehearing. **Motion to strike granted, and rehearing denied.**

## OPINION

By the Court, COLEMAN, C. J.:

Counsel for appellant has moved to strike from the files of the court the reply of respondent to the petition for a rehearing upon the ground that (1) it was not filed within the time allowed by the rules of the court; and (2) for the "reasons that the said reply is sham, frivolous, and irrelevant, and that the same is scandalous, disrespectful to the above-entitled court, and is an unwarranted and libelous reflection upon counsel for appellant."

We will not consider the first reason, since we think the motion should be granted on the ground that the reply is frivolous. The opening paragraph of the reply reads:

"It is with much regret that we take up the task of replying to the alleged petition for rehearing on this

appeal. Regret that we should even find it necessary to read a scurrilous screed, composed almost wholly of balderdash and billingsgate, falsehood and fiction, abuse and vile and contemptuous insinuations, against not only the defendant and his witnesses and counsel, but also against the trial court, which rendered its judgment in favor of the defendant, and the members of this court, which affirmed that judgment."

Throughout the reply many such statements may be found.

We will not undertake to pass upon the merits of the statements quoted. Be they true or false we can see no justification or excuse for the use of such language, either in an oral or a written argument. Certainly a court, engaged in the consideration and disposition of serious matters, should not have its time taken up by having to read such charges. Such language can in no way aid the court in solving the problems presented, and its mind should not be influenced against a litigant or counsel, or diverted from the real purpose of its undertaking. 3 C. J. 1432, 3; Green v. Elbert, 137 U. S. 615, 11 S. Ct. 188, 34 L. Ed. 792. Incidentally we may say that, if counsel for respondent is of the opinion that the petition for a rehearing contains scurrilous matter, he should have attacked it by a motion to strike rather than attack counsel for appellant.

We think the reply to the petition should be stricken. It is so ordered.

### On Petition for Rehearing

By the Court, Coleman, C. J.:

A strenuous petition for a rehearing has been presented. The first matter to which our attention is directed is language in the former opinion which counsel for appellant consider a reflection upon them. It was not our intention to single them out for criticism, and we do not think we said anything which justifies the conclusion reached by counsel. After again reviewing the record, we see no reason to retract what we said in that opinion.

We quote from the petition for a rehearing:

"The second paragraph in the opinion shows, quite clearly, the court missed the main point in the whole case. This paragraph reads as follows: 'A determination of the issues between the parties depends entirely upon the correct location of the north quarter-section corner of section 33, since the plaintiff is admitted to be the owner of the land to the east of the true line between the tracts claimed by the parties, and the defendant of the tract to the west of this line.' "

Counsel then says:

"It was agreed and stipulated between the parties that the boundary line between their respective premises was fixed originally by the United States government survey. The issue in the case, under the pleadings and under the stipulation, cannot now be framed by the court, unless, of course, the court may have meant the location of this corner as fixed by the United States government surveyor, and not the location that some surveyor or even a court might conclude was correct."

How could counsel presume that we meant any other quarter-section corner than the one located by the government survey? There could be but one quarter-section corner. We think it a waste of time to undertake a serious consideration of such a point.

After a careful examination of the petition, we are unable to see greater merit in the other point made than in the one just disposed of.

A rehearing is denied.

DUCKER, J.: I concur.

SANDERS, J.: I dissent.