LIZZIE BACKER, FRED D. BACKER AND WILLIAM J. BACKER, Appellants, *v.* FRANK E. GOWEN AND OLGA GOWEN, Respondents.

No. 3927

February 28, 1957

307 P.2d 765

(Rehearing denied April 1, 1957.)

*Guild, Busey & Guild,* of Reno, and *Foley and Foley,* of Las Vegas, for Appellants.

*Taylor & Gubler, Earl & Earl,* all of Las Vegas, and *Russell B. Holloway,* Oklahoma City, Oklahoma, for Respondents.

# OPINION

By the Court, BADT, C. J.:

Although this action in the court below was primarily in the nature of a suit to quiet title, it is for all intents and purposes an action to establish the boundary between the plaintiffs' land, namely, S ½ SE ¼, section 17, and defendants' land situate along the west line of SW ¼ SW ¼, section 16, T. 21 S, R. 61 E, M.D.B. & M. This boundary in turn is determined by the location of the section corner common to sections 16, 17, 20 and 21 of said township and range. All questions of facts and of law presented to the trial court and raised in this court on appeal have to do with the location of such common corner. The Backers, plaintiffs below and appellants here, contend that such corner is on the center line of north-south U. S. Highway 91, the Las Vegas-Los Angeles highway, widened to 80 feet, and in the center of the old U. S. Highway 91 before being so widened. The contention of the Gowens, defendants below and respondents here, is that such common corner lies 79.45 feet west of such center line. If the contention of appellants is sustained, their land in section 17 abuts the westerly line of the highway. If the contention of the Gowens is sustained, there is a strip of land described in their cross complaint to quiet title fronting 1,118 feet on the westerly line of the highway with a depth varying from 53.89 feet at the northerly end of the strip to 22.04 feet at its southerly end, which is the south boundary of section 16, and which lies in and is a part of SW ¼ SW¼, section 16, and between the Backer land in section 17 and the westerly line of the highway.

The trial court found that the evidence of the plaintiffs failed to sustain their claim that the corner common to sections 16, 17, 20 and 21 was in the center line of the highway and that, on the other hand, there was sufficient evidence to establish the common corner known as the Hesse corner some 80 feet west of the center line of the highway.

The question involved is almost entirely a factual one

and we have concluded that there is substantial evidence in the record to support the trial court's rejection of the plaintiffs' contentions that the evidence compelled an acceptance of a point fixed in the center line of the highway as the discovered original government corner and original government monument evidencing the same fixed by the original government survey of 1881. We have come to the further conclusion that there is substantial evidence to support the trial court's finding that the corner known as the Hesse corner, some 80 feet west of the center line of the highway, was the corner common to the four sections, and that the judgment must, therefore, be affirmed.

The voluminous record of the extensive testimony of some 13 witnesses, the consideration of some 50 exhibits, many of which included groups of related exhibits, and the fact that the parties found it necessary to submit to us some 255 pages of briefs will indicate that a complete analysis of the evidence would prolong this opinion to unjustifiable lengths. We have, accordingly, found it necessary to restrict our discussion of the evidence to so much as we consider necessary as showing substantial support of the court's findings.

(1) The township was originally surveyed by the United States in 1881 through its surveyors Brunt and Proctor, and the original plat of the survey, as well as the original field notes of the surveyors were received in evidence. From such evidence it appears that the original corner common to sections 16, 17, 20 and 21, T. 21 S, R. 61 E, M.D.B. & M., was established and a monument placed at said corner. Munro, a witness for plaintiffs, claims to have found such corner in a survey made by him in 1925 while he was surveying for the Nevada State Highway Department as a location engineer, surveying the realignment of the old route which is now U. S. Highway 91. He testified entirely from his notes and without independent recollection. Those notes showed that the monument found by him and claimed to be the original monument set by Brunt

and Proctor was a post about three feet in height set firmly in the ground. It does not appear to have any markings on it. However, the notes of Brunt and Proctor identify the monument at this corner as follows: "Set Lime Stone, 14x8x6 in. 9 ins. in the ground for Cor. to Secs. 16, 17, 20, 21. Marked with 3 notches on S. and 4 notches on edges. Dug pits 18x18x12, in each Sec. 5½ ft. dist. and raised a mound of earth, 2 ft. high, 4½ ft. base. Land level. Soil 2nd rate. Undergrowth of greasewood and bunch grass." Plaintiffs' witness, surveyor Reid, who followed Munro, attempted to explain this discrepancy by the suggestion that there was a limestone monument one mile south, namely, at the corner common to sections 20, 21, 28 and 29, and that Munro had confused the two in making his notes, although plaintiffs interpret Reid's testimony as indicating that Brunt and Proctor, not Munro, had confused the two monuments. It was testified that such confusion was by no means unusual. This but leads to further difficulties as the Brunt and Proctor notes describe an entirely different stone monument at the corner common to sections 20, 21, 28 and 29. The post thus found by Munro was therefore without evidentiary value as to the location of the original monument. Whitmore v. McNally (Tex. Civ. App.), 39 S.W.2d. 633. There were other discrepancies between the Munro notes and the Brunt and Proctor notes, and Munro's testimony was contradicted on other substantial matters by defendants' witness Bobeau, whose testimony is later referred to. The learned trial judge, in rendering his decision, said: "Now, I am not really impressed with the testimony of Mr. Munro. He testified from memory from his notes, and he did testify that he found what he thought was the original monument which was in the center of the highway. But too many factors have entered into this case to cause the court to believe that this monument was erected originally by Brunt and Proctor. The court finds and feels that there was a monument there, as testified to by both Mr. Munro and Mr. Boyer, but the court does not believe that the plaintiffs have sustained the burden of proof in proving that that was the original

monument. The original field notes of Brunt and Proctor describe this monument, and if it had been undisputed that the monument as found by Munro was the original monument, then the descriptions in the field notes did not control. But there is a very close question of fact, and disputed evidence, as to whether or not that was the original monument. For that reason the field notes must be considered, and they are very valuable evidence on this question."[1] Formal findings followed this decision.

The trial court thus fully recognized, as a matter of law, that the original monument evidencing the corner common to sections 16, 17, 20 and 21, if found and identified (or, if destroyed or obliterated, if its location could be fixed), would control the situation irrespective of the field notes and, undoubtedly, irrespective of the testimony of the defendants' witnesses hereinafter referred to. As a finding of fact however, it was entirely within the province of the court to reject Munro's testimony and, with it, to reject the testimony of the plaintiffs' witnesses who followed Munro in an attempt to establish the location of the corner in question at a point on the center line of the highway, and referred to on plaintiffs' exhibits as "Munro section corner" or as "Section corner as found by R. J. Munro Feb. 1925, reset Sept. 1953 from Munro's notes, by Walter G. Reid, R.E. 235."

(2) Appellants, apparently anticipating at least the possibility that this court would thus affirm the trial court's rejection of Munro's testimony and the corner attempted to be identified by him as the original government corner, next advance the theory that if such be the case, then the corner common to sections 16, 17, 20 and

[1]Supporting the learned trial judge in this conclusion, see Manual of Surveying Instructions, U. S. Dept. of Interior, Bureau of Land Management, 1947, p. 351, sec. 354: "In case of material disagreement between the particular evidence in question and the record calls, the process of elimination of those features regarding which there may be doubt, after making due allowance for natural changes, will serve a most useful purpose, as follows:

"(a) The character and dimensions of the monument in evidence should not be widely different from the record;

"(b) The markings in evidence should not be inconsistent with the record * * *."

21 has become a lost corner and can only be established by the rule of double proportionate measurement;[2] that their witness Reid did apply the rule of double proportionate measurement, and under such rule placed the corner common to the said four sections 94.3 feet east of the center line of the highway, or, from Boyer's notes to the section corner common to sections 15, 16, 21 and 22, and Thompson's distance to the quarter corner on the south line of section 17, 155.98 feet east of such center line, or, from Rathbun's survey map (giving the distance to the quarter corner one half mile west) 97.82 feet east of the center line of the highway. This, and similar testimony, is the portion of the record relied upon by appellants in support of their contention that Reid properly established the corner by double proportionate measurement. Yet he testified that he made no effort to locate the section corner in question with reference to the section corners; that he made no survey; that he did not test the position of the corner he set, by

---

[2]Manual of Surveying Instructions, U. S. Dept. of Interior, Bureau of Land Management, 1947, at p. 292, sec. 367, discusses and defines double proportionate measurement as follows:

"The method of double proportionate measurement is generally applicable to the restoration of lost corners of four townships and of lost interior corners of four sections.

"One identified original corner is balanced by the control of a corresponding original corner upon the opposite side of a particular missing corner which is to be restored, each identified original corner being given a controlling weight inversely proportional to its distance from the lost corner.

"368. In order to restore a lost corner of four townships, a retracement will first be made between the nearest known corners on the meridional line, north and south of the missing corner, and upon that line a temporary stake will be placed at the proper proportionate distance; this will determine the latitude of the lost corner.

"Next, the nearest corners on the latitudinal line will be connected, and a second point will be marked for the proportionate measurement east and west; this point will determine the position of the lost corner in departure (or longitude).

"Then, through the first temporary stake run a line east or west, and through the second temporary stake a line north or south, as relative situations may determine; the intersection of these two lines will fix the position for the restored corner." The same method is then applied to a lost interior corner of four sections, with requirement that the entire distance be measured between the nearest identified corners both north and south and east and west.

rules of double proportionate measurement; that he was not re-establishing a section corner; that he found nothing in the center of the highway to indicate that any corner had ever been at that point except Munro's notes; that he rejected all of the recorded surveys locating the corner west of the highway because none of them really attempted to establish the corner; that he could not find any reason to accept them; that if they had considered the original corner lost, it would have had to be re-set by double proportion; that he gave the highway acquisition map, showing purchases of rights of way based on the section corner as shown on the Snyder survey and accepted by the other recorded surveys in Clark County, no weight because none of them attempted to establish the true position of the original corner in their surveys. He did no surveying himself, except to check some angles and distances with reference to the Munro corner.

In view of the foregoing, the trial court was justified in rejecting the contention of plaintiffs that, assuming the corner in question to be a lost corner, it had been re-established by Reid at the position indicated by Munro or at any one of three different points east of the highway.

The findings, conclusions, judgment and decree of the trial court denying plaintiffs any relief must, therefore, be sustained through plaintiffs' lack of proof that any part of the S ½ of the SE ¼ of section 17, to which subdivision lands owned by plaintiffs are confined, abut to any extent whatsoever upon U. S. Highway 91 or upon the westerly right of way line thereof.

(3) But the findings, conclusions, judgment and decree quieted the title of defendants to the 1118-foot strip of land, varying in depth as above described, abutting the westerly line of the highway, as comprising a part of SW ¼ of SW ¼ of section 16, and based this upon its conclusion that the corner common to sections 16, 17, 20 and 21 was a corner known as the Hesse corner. Appellants contend that this is entirely without support of any kind in the evidence. They claim that defendants rely on the

Hesse corner as a re-establishment of a lost corner; that this could be accomplished only by double proportionate measurement and that such has not been done. Respondents, however, refuse to be placed in such position, deny that they are relying on the Hesse corner as a re-establishment of a lost corner; deny that they contend that the corner in question is a lost corner; and assert that the court's finding of the Hesse corner as the original corner common to said four sections is not only amply supported by the evidence, but that such corner has been accorded general acceptance for almost 30 years. As noted above, we have concluded that the court's finding in this regard has substantial support. In this respect the learned trial judge said in his decision: "Now, I feel that there is sufficient evidence in this case to establish that the common corner is at the place which is known as the 'Hesse corner'. It has been relied upon by the parties for years. Mrs. Backer's testimony is to the effect that she didn't even dispute the ownership of the Gowens. 'We always thought that section 16 was in front of my property until after my husband's death, then we investigated'. And Mr. William J. Backer also testified that he considered that was Gowens' property and offered to buy it, and there was a question of selling him some of Backer [Gowen?] property. There is no dispute at all that all of the parties, including the taxing authorities, the highway department and the residents of the community thought, and the common repute was, that this frontage was the Gowen property. * * * Before the cloud was cast upon it, he did sell some of the property to the Sosses, and also to the state highway for road purposes. The state highway returned the deed to the Backers, informing them they didn't need the deed because their property didn't border on the highway, and at that time the Backers understood that and accepted the return of the deed, and evidently were in harmony with the records of the state highway department at that time. The equities in this case are entirely with the Gowens."

Following the same course we adopted in referring

only to so much of the evidence as was necessary to support the court's rejection of the claim of plaintiffs, we must curtail the length of this opinion by referring only to so much of the evidence as appears necessary to support the court finding that the Hesse corner was the corner common to sections 16, 17, 20 and 21 in said township.

The predecessor of the Gowens, C. P. Squires, of advanced years and unable to appear as a witness, testified by way of deposition. He had lived in Las Vegas since 1905 and acquired the SW ¼ of SW ¼ of section 16 by tax deed from Clark County in 1926. At that time he saw the southwest corner of the property. It was designated by a stake located 79 or 80 feet west of the center line of the highway. He also saw the stake serving as a monument of the NW corner of the 40 acre tract about 150 feet west of the place that the center line of the highway crossed the north line of his property. This would be the NW corner of the SW ¼ of the SW ¼ of section 16. In December of the same year the highway sought to purchase from him 80 feet for purposes of a highway through the property. He received a highway plat which showed the distance from the center line of the highway to the common section corner as 79.37 feet. The plat was identified by highway officials. The purchase was consummated and the state highway department paid his $7,500 for the land. In 1936 he had conversations with the Backers in which he offered to sell them the property. "I just thought it would be a nice thing for them to have their property extended out to front on the highway and at the same time I might receive a little money for it. * * * I discussed with Mr. and Mrs. Backer the distance that my west line was located from the center of the highway * * * there never was any contradiction, never was any discussion or argument about where the line was. They seemed to accept it the same as I did. * * *." He further testified to his sale in 1944 to Mr. and Mrs. Gowen of the portion of the SW ¼ of the SW ¼ of section 16 lying west of the highway and that he then showed Mr. Gowen the

corner stakes above referred to and which had been there when he purchased the property.

C. C. Boyer, a civil engineer and highway engineer for some fifty-two years, was connected with the Nevada Highway Department from 1920 to 1950 and was division engineer in Las Vegas during the construction of the highway south of Las Vegas and at the time Fred Hesse surveyed the lines between sections 16 and 17 in 1925 and 1926. He personally saw Hesse making the survey and although he did not go over it in detail with him until after it was completed, he did ask him to identify some of the points along it on the ground. Hesse did not file his notes, as the statute requiring land surveyors to file their plats and notes was not in effect at that time. See historical references at NRS 625.340 et seq. Hesse pointed out to him a 4x4 stake eighteen inches or two feet out of the ground with rocks around it and identified the stake as the corner in question, and Boyer used it to tie in the center line of the highway, approximately 80 feet to the east of such corner. At the same time Hesse identified for him the sixteenth corner on the west boundary of the forty, 145 or 146 feet north of the section corner. Boyer subsequently, on behalf of the state highway department, made further tie-ins from the center line of the proposed highway to the section line as found by Hesse up to a mile or mile and a half to the north, submitted them to the highway department and they were accepted by the department. Hesse had died several years before the trial. Neither his plats nor his field notes were produced and it is true that the record does not disclose by what ties Hesse fixed the corner in its position. Boyer testifies that Hesse "had worked apparently from corners that were in place, or marks so that they were identified" and that he accepted the Hesse corner for such reason and because the distances given on the west line of section 16 "were pretty close to what they should have been". Boyer also identified a number of deeds under which various persons had conveyed strips for rights of way to the State of Nevada in 1926 and in 1943, all based upon the acceptance of the Hesse corner.

In 1929 the board of commissioners of Clark County designated a right of way for a public road, which was the predecessor of U. S. Highway 91, and Arthur R. Thompson, civil engineer, made a survey pursuant thereto. Although he found no monument at the corner common to sections 16, 17, 20 and 21, he established this corner as follows: "The north line of section 21 from the north quarter corner west through a sixteenth corner, which had been established, was produced west to an intersection with a line run between the west quarter corner of section 16 and the west quarter corner of section 21 and at this point a concrete monument and witness posts were set as shown [on his plat]." He further certified: "This location is in accordance with lines as run by the state highway department. Bearings of lines were established by direct solar observation." His plat was approved by the county commissioners of Clark County in February, 1930.

L. M. Bobeau, a registered land and mineral surveyor of Nevada, testified at length concerning the Thompson map. Bobeau had followed his profession for about 50 years and held responsible positions with the government, including the Department of Interior, the Atomic Energy Commission, the army and the United States Geological Survey in other states as well as Nevada. With reference to his work in connection with the proper location of the corner common to sections 16, 17, 20 and 21, he testified as follows: "I put in about seventeen days direct field work, after several days of record search and consultation with other surveyors and various other sources from which I thought I could get information pertaining to this particular corner. And I laid down a precise base line and triangulation system so that I would be able to correlate and coordinate other section corners as well as the one in particular in the area. And I retraced from the existing surveys of record. I also made several interpretations on some of those surveys to duplicate them upon the ground, from which I made, I would say, quite extensive excavations in my effort to find any other evidence of a corner at that point. * * * I was assisted by a survey crew and had as

my principal assistant Mr. George Roberts who has had about thirty years experience and is a very capable man. * * * I endeavored by double proportionate measurements to verify the section in question. I computed and made up some coordination figures from my triangulation, and due to the fact that the outlined section corners upon which they would depend are not in satisfactory position as to evidence, I had to give up the idea, abandon it. I was unable by double proportionate measurements to verify the location of the section corner. * * * From my work on the ground and from my investigation of the matter I did form an opinion as to the correct section corner common to sections 16, 17, 20 and 21, T. 21 S, R. 61 E. In my opinion the correct corner in question would be the concrete monument shown on this Rathbun survey." The Rathbun survey showed the common corner to be 80.33 feet west of the center line of the highway. Bobeau's actual measurement showed it to be 80.37 feet west of the center line. Bobeau was then shown a series of some twenty-eight plats, all comprising one exhibit introduced by defendants, testified to his familiarity with all of these plats from careful examination and found that they represented twenty-eight recorded surveys in the county by thirteen surveyors and ranging in time from 1930 to 1953, all of which had adopted the Rathbun or Thompson corner. At this point he discovered a concrete monument six inches square at the top and a foot in depth, with an iron in the top of it. Photographs of the monument were received in evidence. He carefully and exhaustively investigated for evidence of any other monuments or marks at this corner but found none. He accepted the monument as a matter of common repute used by thirteen other surveyors and twenty-eight recorded plans based thereon. In his investigations and surveys he found no evidence to cause him to doubt or dispute the monument, and in determining the location of the section corner he knows of no evidence that he did not use. He testified that according to survey rules and law, when measurements on the ground are inconsistent (he had examined and rejected the Munro

survey), reliance could be placed on a matter of common repute, the testimony of the residents in the area and the physical evidence on the ground. The concrete monument referred to is generally identified as the corner in question and he found out nothing to the contrary from any source whatsoever to dispute the fact that it is the true corner in question. He himself ran a number of lines in identifying the corner: "There were nearby triangulations, stations or monuments. I think an iron pipe was set about 180 feet away from this monument allowing us to triangulate the distance from the northwest corner of section 20, that is the next mile west of this corner; and that work was based, of course, on a base line along the Union Pacific railroad, quite a long base line, and all of those corners had to be accessible from that base line. Due to numerous buildings and works of man and improvements, it was impossible to work directly on the section lines. * * * There were about three areas in this vicinity and close around this corner that were excavated for a matter of fifteen or twenty feet in diameter. That is, test positions, and to approximately a three foot depth, to be sure that there was nothing concealed in the fill of the shoulder of the road at that point, and I did not find anything." With regard to the effect of the acceptance of the Munro corner as identified and approved by Reid, Bobeau testified: "It would almost wipe out the 200 foot strip, the right of way of the Southern Nevada Power Company. It would encroach entirely upon the frontages of the respective properties on both sides of the highway. 193 feet would take practically all of the frontage of some of those motels. * * * All property boundaries and titles would be affected in sections 16, 17, 20 and 21." As to the importance accorded such a situation, see Rowell v. Weinemann, 119 Ia. 256, 93 N.W. 279, 97 Am.St.Rep. 310.

It should be remembered again in consideration of the sufficiency of the evidence to justify the trial court's rejection of the Munro corner and the acceptance of the Hesse corner that neither is claimed by its respective proponents to be the result of a re-survey to establish

a lost corner. Neither party was relegated to the necessity (assuming such necessity under government regulations) of the sole method of double proportionate measurement. Nor has such necessity gone without question in the courts. In McKenzie v. Nichelini, 43 Cal.App. 194, 184 P. 871, and in Hammond Lumber Company v. Haw, 96 Cal.App. 390, 274 P. 386, the court held the evidence to be sufficient to permit approximate location of quarter corners established under the original survey so as to justify rejection of the proportionate method of locating them. See also the dictum in Thomsen v. Keil, 48 Nev. 1, 226 P. 309, 232 P. 1080.

In any event, where the inquiry has been directed to determining the location of the original corner, the findings of the court, often based largely on hearsay evidence, have, as a matter of necessity, relied on evidence of acquiescence of the parties concerned, acts of public authorities, the location of established boundary lines, general reputation and tradition as to where the lost monuments had been located, including the testimony of persons who saw them when they were formerly discernible. See Clement v. Packer, 8 S. Ct. 907, 125 U. S. 309, 31 L.Ed. 721; Boardman v. The Lessees of Reed and Ford, 6 Peters 328, 8 L.Ed. 415; Taylor v. Fomby, 116 Ala. 621, 67 Am.St.Rep. 149, 22 So. 910; Daggett v. Shaw, 5 Metcalf 223 (Mass.) ; Smith v. Forrest, 49 N.H. (1 Shirley) 230; Royal v. Chandler, 83 Me. 150, 21 A. 842; Rowell v. Weinemann, 119 Ia. 256, 93 N.W. 279, 97 Am.St.Rep. 310; 8 Am.Jur. 812, Boundaries, sec. 93. We are not concerned with the sufficiency of such evidence to produce conviction in our minds, but we are satisfied that it furnishes substantial support for the trial court's findings.

(4) Appellants assign as error the fact that the opinion of the trial court (to whom the case was tried without a jury) found the Hesse corner to be the location of the corner common to the said four sections,

while the description in the findings disclose what was known as the Gowen-Eastland corner. The former is 79.45 feet and the latter 80.37 feet west of the center line of the highway. There is also a variance in the north and south distance. If the variance is material and if the discrepancy was error, appellants are not in position to avail themselves of it. Whichever point is the correct one, no part of defendants' land would encroach on section 17 and no part of plaintiffs' land in section 17 would encroach on defendants' strip in section 16 abutting the west line of the highway.

(5) Error is assigned in admitting the map of a survey made by Van Eastland. The Eastland survey and map were made before the litigation and before the Gowen ownership attached. It was offered for the limited purpose of reputation as to boundary lines and was cumulative with reference to the many other plats received. Eastland was ill and unable to testify in person. Appellants complain that they had no opportunity to cross examine him. We think the learned trial judge appreciated the situation, viewed the map in its proper perspective in connection with the many other plats received in evidence and cannot be said to have based his decision on this survey. If there is doubt as to its competency, it would not appear that the error, if any, was prejudicial. Appellants also assign error to the admission of the state highway acquisition map under which it purchased its right of way from Squires for the reason that the map was dated in 1938 while the highway department's letter to Squires with reference thereto was dated in 1926. However, the map was identified by C. C. Boyer of the highway department as that identifying the right of way to be acquired from Squires. It was properly admitted. Appellants also attack the admission of a map prepared by Campbell Realty Company from information deemed by it reliable showing many parcels of property in the district on the ground that it was incompetent for any purpose. The court

intervened to question the witness and elicited the fact that he was a licensed real estate broker and as such was familiar with the property displayed in the proposed exhibit and that the same portrayed the general reputation of the different parcels as shown and that he had sold some of the parcels represented thereon. The court apparently accepted the map as cumulative evidence of general and common repute. Again we think the court accorded it only its proper weight. The court likewise overruled an objection to the map received by Gowen from the state highway department in connection with acquisition of Gowen property for highway purposes. Appellants complain that it was not identified by any highway official but was simply received by Gowen in the mail. We think, however, that its identification as a highway acquisition map, subsequently made to the court's satisfaction, qualified it against the attack made. Appellants complain of the cumulative effect of the four items discussed and assert that these items must have entered strongly into the trial court's decision. However, they formed, in our opinion, but a minor part of the total evidence submitted, were largely cumulative and we cannot say that the same were prejudicial.

(6) Another issue in the case, to which the briefs devoted much space, was the defendants' claim to a title by prescription. In view of our disposition of what may be considered the main issue, it becomes unnecessary to discuss the question of defendants' asserted prescriptive title. We have also carefully considered the many other incidental points painstakingly presented by counsel, but they do not affect the result reached.

Affirmed with costs.

EATHER and MERRILL, JJ., concur.